Isidore SHULMAN, Plaintiff,

v.

WASHINGTON HOSPITAL CENTER
et al., Defendants.

Civ. A. No. 1494–63.

United States District Court
District of Columbia.

Oct. 9, 1963.

**60**

John L. Laskey, Washington, D. C., for defendants Washington Hospital Center and others, for the motion.

Alvin L. Newmyer, Washington, D. C., for plaintiff, opposed.

HOLTZOFF, District Judge.

The question presented in this case is whether the failure of a private hospital to renew the membership of a physician on its "Courtesy Staff", is subject to judicial review. It is one of novel impression in this jurisdiction. This Court answers the question in the negative, subject to the possible qualification that there may be judicial review only if the hospital violates procedural requirements prescribed by its own charter, constitution, by-laws, rules or regulations. The last mentioned aspect is not involved in this case.

The plaintiff, Dr. Isidore Shulman, has been a member of what is known as the "Courtesy Staff" of the defendant Washington Hospital Center, located in Washington, D. C. Appointments to the staff are made for a period of one year, and may be renewed from year to year. The plaintiff's membership was not renewed for 1963. He brings this suit in order to secure reinstatement and prays for a declaratory judgment and an injunction, as well as for damages against the hospital and its officers for malicious defamation of his professional standing. The

case is now before this Court on the defendants' motion for summary judgment.

The salient facts may be briefly summarized as follows. The defendant Washington Hospital Center is a non-stock, non-profit corporation organized by private individuals under the laws of the District of Columbia. Its affairs and funds are controlled and managed by a Board of Trustees elected by members of the corporation. It owns, maintains and operates a hospital in Washington, D. C., likewise known by the same appellation as the corporation. Pursuant to authority conferred by Acts of Congress, the hospital was built by the Federal Government on a site owned by the United States, which formerly formed a part of the grounds of the Soldiers' Home. Likewise, pursuant to Congressional authority the hospital was conveyed by the Government to the defendant corporation. The latter owns, maintains, and operates the hospital without any participation on the part of any representative of the United States and receives no funds or other aid from the United States beyond the original conveyance of the land and the plant. In addition to treating private patients, the hospital also gives medical care to indigent persons and by contract with the District of Columbia receives compensation for so doing.

The Board of Trustees is required by its by-laws to appoint a medical staff, each appointment to be effective for one year only, but renewable on recommendation of the medical staff. The by-laws further provide that the Board of Trustees shall have the right to permit any doctor of medicine to practise his profession at the hospital and to exclude any physician who had previously done so. The medical staff is subdivided into four groups, known as emeritus, consulting, active and courtesy staffs. Members of the courtesy staff, which consists of over 650 persons, are permitted to recommend their private patients for admission to the hospital, and to attend to them there. The plaintiff, Dr. Isidore Shulman was named to the courtesy staff in February, 1958. His appointment was renewed from year to

year, until January 1963. At that time the Medical Board recommended against the renewal of five appointments to the courtesy staff, Dr. Shulman's being one of them. This recommendation was accepted by the Board of Trustees. The reason for this action is not disclosed in the record. The plaintiff thereupon brought this suit, seeking reinstatement and damages.

 The first question to be considered is the legal status of the defendant hospital. All hospitals (with the exception of those maintained by the United States for members of its armed forces and for veterans) may be divided into two categories,—public hospitals and private hospitals. A public hospital, as its very name implies, is one owned, maintained and operated by a governmental unit, such as a municipality, or county, and supported by governmental funds. The Court takes judicial notice of the fact that there are two such hospitals in the District of Columbia,—the District of Columbia General Hospital maintained by the local government, and Freedman's Hospital, a unique instituion, belonging to the Federal Government. A private hospital is one that is owned, maintained and operated by a corporation or an individual without any participation on the part of any governmental agency in its control. The fact that a hospital is operated for the benefit of the public and not for profit, does not detract from its character as a private institution, if it is established and maintained by a private corporation or individual with authority to elect or appoint is own officers and directors.

This distinction between public and private institutions was formulated by the Court of Appeals of Maryland in Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 178, 46 A.2d 298, 300, in the following manner:

"The essential difference between a public and a private corporation has long been recognized at common law. A public corporation is an instrumentality of the State, founded and owned by the State in the public interest, supported by public funds, and governed by managers deriving their authority from the State. Public institutions, such as State, county and city hospitals and asylums, are owned by the public and are devoted chiefly to public purposes. On the other hand, a corporation organized by permission of the Legislature, supported largely by voluntary contributions, and managed by officers and directors who are not representatives of the State or any political subdivision, is a private corporation, although engaged in charitable work or performing duties similar to those of public corporations. * * So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own officers and directors. * * * "

██ The fact that a private hospital may receive donations or subventions from the Government, or compensation from a city or county for caring for sick or disabled indigent persons, does not transform it into a public institution, Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554, 556, affirmed 239 N.Y. 615, 147 N.E. 219. Similarly, the circumstance that it was constructed with the aid of Government funds, as is the case in this instance, does not detract from its status as a private hospital. Thus, it was said by the Supreme Court of Appeals of Virginia, in Khoury v. Community Memorial Hospital, Inc., 203 Va. 236, 123 S.E.2d 533, 538:

"The hospital is not owned by the federal or the state government, albeit federal and state funds may have made its construction possible. It is not an instrumentality of government for the administration of any public duty, although the service it performs is in the public interest. Its officers are not appointed by and are not representatives of government, notwithstanding that their au-

thority stems from legislative enactments. Under these circumstances, the hospital falls squarely within the time-honored definition of a private corporation."

The Supreme Court of Florida in West Coast Hospital Ass'n. v. Hoare (Fla.) 64 So.2d 293, 296, stated that such an institution may be conducted as a public charity and may be supported by appropriations by the state, county, or municipality, without becoming a public hospital.

In Edson v. Griffin Hospital, 21 Conn. Sup. 55, 144 A.2d 341, 344, the test of a private hospital was formulated as follows:

"The test is whether, under the charter or corporate powers granted, they have the right to elect their own officers and directors, with the power to manage their own affairs."

■ The conclusion is inescapable that the Washington Hospital Center is a private hospital within the criterion enunciated by the authorities. It is owned, maintained and operated by a corporation in which no governmental agency participates, either in respect to ownership or control. The corporation elects its own officers and directors and manages its own affairs. As shown above, the fact that originally the hospital was built with government funds and then conveyed to the corporation, and that it receives compensation from the District of Columbia for caring for indigent patients does not affect its legal status as a private institution.

■ A private hospital is not a public utility in the legal sense of that term. Neither is the operation of the hospital a public calling, such as that of a common carrier, light or power companies, or a telephone company. Thus, rates and charges of a private hospital are not subject to governmental regulation. Such an institution is not required to accept every person who demands access to its facilities, but may select and choose only those prospective patients whom it feels it is in a position to benefit to the extent of its capacity. Otherwise, any hypochondriac, or any person who is only slightly ill, might insist on admission, thereby taking space and using services and facilities that should be accorded to patients who really need hospitalization.

Thus, it was said in Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554, 558, affirmed 239 N.Y. 615, 147 N.E. 219:

"The law does not require a corporation like defendant to furnish its services and accommodations to every one who applies, whether patient or physician. There can be no absolute right in individuals to claim the benefit of its privileges. Such a thing would be impossible. There must be discretion vested in the management to make selection from applicants with regard to accommodations available. It may reject one who has some trivial ailment, and accept another whose needs are greater."

In Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 180, 46 A.2d 298, 301, it was stated:

"A private hospital is not under a common law duty to serve everyone who applies for treatment or permission to serve. In the absence of statute, it may accept some applicants and reject others."

The Court takes judicial notice of the fact that the hospital operated by the defendant is not the only private hospital of a general character in Washington, D. C., but that there are a number of similar institutions located in the city.[1] In addition there is a private hospital specializing in children's diseases, and there are also several proprietary hospitals.

---

1. Among other hospitals in Washington, D. C. of this type are Casualty Hospital, Georgetown University Hospital, George Washington University Hospital, Provi-

dence Hospital and Sibley Hospital. There are also several in nearby Maryland and Virginia.

We now reach the specific question involved in the case at bar, namely, whether a private hospital has power to appoint and remove members of its medical staff at will, and whether it has authority to exclude in its discretion members of the medical profession from practising in the hospital. The overwhelming weight of authority, almost approaching unanimity, is to the effect that such power and authority exist. The rule is well established that a private hospital has a right to exclude any physician from practising therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, or declining to renew an appointment that has expired, or excluding any physician or surgeon from practising in the hospital, is not subject to judicial review. The decision of the ·hospital authorities in such matters is final.

The only possible exception is in a case in which there is a failure to conform to procedural requirements set forth in its constitution, by-laws, or rules and regulations. In that event the extent of judicial review is to require compliance with the prescribed procedure. Beyond that, the courts do not interfere. In the instant case, the by-laws, which are a part of the record on this motion, do not provide any specific procedure.

While the question is of novel impression in this jurisdiction, it has been decided time and time again in many of the States. This is the law in Maryland, through which the District of Columbia derives its common law. Thus in Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 A.2d 298, the plaintiff physician had been a member of the visiting staff of the defendant hospital and thereby had been enabled to treat his patients in either private or semi-private rooms. He was dropped from the visiting staff and placed on the courtesy staff, entitling him to attend to patients only in private rooms. He brought suit for an injunction against the hospital. The Court of Appeals of Maryland held that the board of officers of the hospital had a right to appoint physicians to the medical staff, as well as to fail to reappoint any one. Accordingly, a demurrer to the bill of complaint was sustained. The Court stated that "a private hospital has the right to exclude any physician from practising therein, and such exclusion rests within the sound discretion of the managing authorities" (186 Md. pp. 179–180, 46 A.2d p. 301).

This doctrine has been approved and applied in Virginia. In Khoury v. Community Memorial Hospital, Inc., 203 Va. 236, 123 S.E.2d 533, the plaintiff physician was temporarily extended professional privileges at the defendant's hospital, but this authority was later revoked. He brought suit to enjoin his dismissal. A final decree for the defendant was affirmed. The Court stated:

"We are of the opinion that when the trustees of a private hospital, in their sound discretion, exclude a doctor from the use of the facilities of the hospital, the courts are without authority to nullify that discretion by injunctive process. There are no constitutional or statutory rights of the doctor, or of his patients who wish to be treated in the hospital by him, which warrant such interference."

The following authorities, among others, hold to the same effect. Edson v. Griffin Hospital, 21 Conn.Sup. 55, 144 A.2d 341; West Coast Hospital Ass'n. v. Hoare (Fla.) 64 So.2d 293; Natale v. Sisters of Mercy of Council Bluffs, 243 Iowa 582, 52 N.W.2d 701; Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554, aff. 239 N.Y. 615, 147 N.E. 219; Leider v. Beth Israel Hosp. Ass'n., 11 N.Y.2d 205, 227 N.Y.S. 2d 900, 182 N.E.2d 393; Weary v. Baylor University Hospital (Tex.Civ.App.) 360 S.W.2d 895.

Only recently the Court of Appeals of New York in Leider v. Beth Israel Hosp. Ass'n., supra, stated that a physician's exclusion from the staff, including privileges incident to staff membership, "rested entirely in the discretion of the board of trustees".

New Jersey seems to stand alone in apparently adopting a different rule, Raymond v. Cregar, 38 N.J. 472, 185 A.2d 856; Greisman v. Newcomb Hospital, 76 N.J.Super. 149, 183 A.2d 878.

As has been previously indicated, another principle may well be invoked in situations in which a specific procedure is prescribed by the constitution, by-laws, rules or regulations of the hospital for admitting or excluding a physician from its staff and it is claimed that the hospital authorities did not comply with those requirements. Under such circumstances, some courts have intervened, but only to the extent of requiring adherence to the prescribed procedure, Berberian v. Lancaster Osteopathic Hosp. Ass'n. Inc., 395 Pa. 257, 149 A.2d 456. No such question is involved in the case at bar.

Some decisions have distinguished between private and public hospitals in this connection, and have permitted a limited court review in such matters in cases of public hospitals. Rosner v. Eden Township Hospital District, 58 Cal.2d 592, 25 Cal.Rptr. 551, 375 P.2d 431; North Broward Hospital District v. Mizell, Fla., 148 So.2d 1; Dayan v. Wood River Township Hospital, 18 Ill.App.2d 263, 152 N.E. 2d 205; Alpert v. Board of Governors of City Hospital, 286 App.Div. 542, 145 N.Y. S.2d 534. This, too, is a phase of the subject that does not confront the Court in this instance.

There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities. The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is admitted or licensed to practice his profession does not justify any inference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily hospitals endeavor to secure the most competent and experienced staff for their patients. Without regard to the absence of any legal liability, the hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. In matters such as these the courts are not in a position to substitute their judgment for that of professional groups.

It is cogently argued that considering the large number of physicians and surgeons found in a big city such as Washington, it is not practicable for any single hospital to accommodate every member of the profession with its facilities. It is persuasively urged that there are a number of private hospitals in the District of Columbia and that no one of them is physically capable of extending its resources to every doctor of medicine practising in the area. It becomes indispensable, therefore, for every such institution to make choices as to whom it will admit to its portals.

The Court is not unmindful of the fact that due to the shortcomings of human nature, an occasional injustice may result, because of clashes of personality or temperament, possible likes and dislikes, jealousy or differences of opinion. The Courts, however, do not sit to remedy every ill caused by the frailties of mankind. Their function is but to vindicate legal rights and redress legal wrongs.

In view of the conclusion reached that the Court may not interpose to review the decision of the hospital in failing to renew the plaintiff's appointment on the

courtesy staff, no action lies against the corporation or its officers for a declaratory judgment or an injunction.

Little need be said as to the claim for damages for defamation. It does not appear whether the failure to renew the plaintiff's appointment was due to any alleged defect on his part in his professional capability or integrity, or whether it was caused by some circumstance that does not reflect on his professional standing. There is no averment as to the exact contents of the alleged defamatory statement. Clearly no valid claim for damages for defamation, be it libel or slander, is set forth in the complaint.

Accordingly, the defendants' motion for summary judgment is granted.