**Alec C. LEVIN, Plaintiff,**

**v.**

**DOCTORS HOSPITAL, INC., Defendant.**

**Civ. A. No. 2324-63.**

United States District Court
District of Columbia.

Oct. 5, 1964.

George A. Chadwick, Jr., Washington, D. C., for defendant, for the motion.

Vincent J. Fuller, Washington, D. C., for the plaintiff, opposed.

HOLTZOFF, District Judge.

This is an action by a podiatrist, popularly known as a chiropodist, to invalidate a bylaw of the defendant Doctors Hospital, which bars podiatrists from admitting patients and performing surgical operations in the hospital, except under the supervision of a member of the medical staff. Originally there was a second defendant—the Joint Commission on Accreditation of Hospitals—but service of process on it was quashed. The plaintiff claims that to deprive him of an opportunity to practice in the hospital with the same freedom as a physician or surgeon, is a violation of the Sherman Antitrust Act. The defendant moves for summary judgment.

Under the laws of the District of Columbia, physicians and surgeons are licensed to practice "the healing art" upon meeting specified educational qualifications and passing prescribed examinations, D.C.Code 2–101 et seq. Podiatrists are likewise licensed, but their authorization is not to practice the healing art generally, but only to pursue their own specialty, D.C.Code 2–701 et seq. The educational and similar requirements for entry into the practice of podiatry are not as high or stringent as those exacted of physicians and surgeons. The plaintiff is a licensed podiatrist practicing in the District of Columbia. The defendant

Doctors Hospital is a private hospital operating in the District.

A non-profit organization known as the Joint Commission on Accreditation of Hospitals, was established by the medical and hospital professions some years ago for the purpose of promulgating standards to be attained by hospitals and accrediting those which upon examination by representatives of the Commission, were found to achieve the required level. Naturally the standing and reputation of a hospital is affected by the question whether it is certified by the Commission, since the Commission, though a private organization, is recognized as an authority in medical and hospital circles. Manifestly the public is greatly benefited by this activity, as it tends to secure the best possible hospital care and treatment for persons requiring attention in such institution.

The standards promulgated by the Commission are detailed and meticulous and are contained in a book of 140 pages. The purpose is to reach and maintain a high grade of excellence in hospitals and to assure the best possible care and service to patients. The staff of the Commission examined Doctors Hospital in April 1963, and found that it failed to comply with its requirements in about twenty-five different respects. One of the objections was that podiatrists were permitted to admit patients to the hospital and to perform surgical operations without being supervised by members of the medical staff. On May 15, 1963, the Commission on the basis of these deficiencies withdrew its previous accreditation of the hospital. It was the view of the Commission that proper care of patients required that services rendered by technicians—and podiatrists were to be regarded as technicians—be supervised by members of the medical staff. The Manual issued by the Commission provides that "a physician must be in attendance when the chiropodist is operating in the hospital on an inpatient" (p. 66). Doctors Hospital then endeavored to cure all of the defects pointed out by the Commission, and among other things,

adopted a bylaw on the subject of podiatrists and other technicians in order to carry out the views of the Joint Commission. This bylaw reads as follows:

"Technicians in allied fields (physical therapists, clinical psychologists, podiatrists, chiropodists, etc.) may render services to hospital patients under the following conditions:

"a. Each individual in this category will present his qualifications for review by the medical staff. If approved, the governing body may grant such individual privileges as restricted by sections (b) and (c) of this paragraph.

"b. They may not admit patients nor write any orders for patient care.

"c. Their services will be performed at the request of and under the direct supervision of a member of the medical staff who will be responsible for the patient and his records in all respects."

The plaintiff declined to refer any further cases or to perform any services at the Hospital under these limitations. He brought this action to declare the bylaw null and void on the theory that the restriction on his activities was an an illegal restraint of trade under the Sherman Antitrust Act. He contends that the action of the Joint Commission and the compliance of the Hospital with its conditions, in order to secure renewal of the accreditation, constituted a conspiracy. The defendant Hospital moves for summary judgment.

■■ The plaintiff's contention is farfetched. Endeavors of professional groups to raise the ethical standards of their profession and to enhance the quality of services rendered to the public are to be encouraged and commended. They do not constitute a restraint of trade, even if they result in the elimination of some persons who are not regarded as sufficiently qualified, or in a limitation of activities on the part of some professional men. This principle

is particularly important where considerations of public health and the welfare of individual patients are involved. The affidavits in support of the motion demonstrate with meticulous care the various steps taken by the defendants and their endeavors and purpose to maintain hospital care at the highest practicable level.

 The argument advanced by plaintiff's counsel that since under the Act of Congress the plaintiff is entitled to practice podiatry, the hospital may not place any limitations on his activities in that field, is untenable. Hospitals have a right to use their discretion to admit or reject licensed physicians and surgeons to practice within their establishments, Shulman v. Washington Hospital Center, D.C., 222 F.Supp. 59. For example, the mere fact that a member of the medical profession is licensed to practice medicine and surgery does not necessarily mean that every hospital would permit him to perform any kind of an operation, irrespective of his qualifications for the specific task. Hospitals admit to their medical staffs only those physicians and surgeons whom they consider well qualified, and the mere fact that a doctor is licensed to practice does not mean that he is fit to treat any disease whatever, or perform an operation of any kind. To use an analogy, not every lawyer is qualified to perform legal work of every type.

Plaintiff's counsel apparently does not dispute these general propositions. He argues, however, that the complaint charges that the defendant's motive was improper, namely, to eliminate competition on the part of podiatrists as against orthopedic surgeons, and contends that these allegations are sufficient to require a denial of the defendant's motion. Disagreeable adjectives and approbrious labels cannot create a cause of action where none otherwise exists.

Moreover, this issue is not properly raised. The defendant hospital adduced detailed affidavits setting forth with great particularity the various steps taken by the Joint Commission and the Hospital in regard to this matter and the reasons therefor. These affidavits are uncontroverted. No answering affidavits have been filed. The general allegations contained in the unverified complaint are not sufficient to raise an issue of fact on a motion for summary judgment. This matter is governed by the 1963 amendment to Rule 56(e) of the Federal Rules of Civil Procedure, reading as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Defendant's motion for summary judgment is granted.