232 A.2d 596.

EUGENE A. HAGAN *vs.* OSTEOPATHIC GENERAL HOSPITAL OF
RHODE ISLAND *et al.*

AUGUST 18, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This cause was commenced on August 4, 1965, with the filing in the superior court of a bill in equity pursuant to the practice in effect prior to January 10, 1966, on which date the distinctions between causes in equity and actions at law were abolished by the provisions of P. L. 1965, chapter 55, and by rules promulgated by the superior court on the authority of the cited statute.

It is before the court on plaintiff's appeal from the entry of a judgment rendered by a superior court justice for the defendants.

The record establishes that plaintiff is a lifelong resident of Rhode Island and was graduated from the Kansas City College of Osteopathy and Surgery in 1961. In that year he was licensed to practice medicine in this state and commenced a year's internship at the Osteopathic General Hospital of Rhode Island, a named defendant; the only Osteopathic Hospital in Rhode Island, it was originally incorporated by the general assembly at its January, 1931, session

as a nonbusiness, nonprofit charitable corporation for the purpose of organizing, erecting, equipping and maintaining a hospital for the sick, disabled and injured. By its charter the corporation is expressly exempted from the assessment of state and municipal taxes and is empowered to acquire, receive, take and hold real and personal property for the carrying out of its charitable and humane purposes.

During his internship, plaintiff became interested in training for General Surgery and on completion of his internship at respondent hospital in 1962, he took up residency at the Grandview Hospital in Dayton, Ohio. It is his testimony that he did so with the intention of returning to defendant hospital and was encouraged by defendant Dr. Frederick S. Lenz to believe that on his return he would be admitted to the hospital staff. It is also his testimony that while so affiliated with the hospital he worked with Dr. Foster C. True, then chief of surgery, who encouraged him to train for surgery and return to work with him. This testimony was corroborated by Dr. True.

Further, plaintiff stresses that in April 1964, with a year of his residence at Grandview Hospital remaining, he talked with Dr. Lenz about returning to defendant hospital as a member of the staff and was then advised by Dr. Lenz, who became chief of surgery later that year, that with completion of plaintiff's residence at Grandview he would be acceptable to Dr. Lenz. The testimony of Dr. Lenz, however, is not open to the unqualified endorsement for which plaintiff contends.

In any event, plaintiff first became concerned about being accepted on the staff of defendant hospital in June, 1964 when he learned that Dr. Frank A. Gants, then medical director of defendant hospital, was making inquiries regarding other qualified orthopedic surgeons who might be interested in a staff appointment. Motivated by this concern, plaintiff filed an application for admission to defendant hospital

staff on December 18, 1964, although his residence in Grandview would not be completed until the following July.

The record further discloses that one Dr. James F. Grimaud also filed an application for staff membership in April, 1965. The significance of this circumstance arises out of the July 8, 1965, decision of defendant hospital Board of Trustees approving the recommendation of the Staff Executive Committee to reject plaintiff's application and accept Dr. Grimaud's.

Following notice of the Board of Trustees' decision, plaintiff requested a hearing pursuant to the provisions of defendant hospital's bylaws. His request was denied and plaintiff commenced the instant litigation.

Thereafter, on August 27, 1965, the Staff Executive Committee met to accord plaintiff a hearing in accordance with the bylaws. He appeared with counsel at said hearing, but his application was again denied. On August 31, 1965, the Board of Trustees met to give plaintiff a hearing on his appeal from the decision of the Staff Executive Committee as provided by the bylaws and following said hearing the Board of Trustees voted to adopt the recommendation of the Staff Executive Committee. The Board of Trustees' decision embodied the recommendation that plaintiff be given favorable consideration when a vacancy next occurred.

Thereafter, plaintiff filed a supplemental bill of complaint on September 14, 1965, to conform to the facts of the hearings as aforesaid and a hearing on said amended bill, answer, and proof began before a superior court justice on September 28, 1965.

The record further discloses that by letter dated June 23, 1965, Dr. Grimaud indicated to Dr. Lenz that he had doubts regarding accepting his appointment; and by letter dated October 5, 1965, he confirmed his decision to decline the appointment. The plaintiff on becoming aware of this, filed a new application on October 19, 1965. This application

was given no consideration by any of the appropriate authorities vested with jurisdiction under the bylaws.

When in the course of the hearing in the superior court on the supplemental bill, the justice of that court learned that this second application had not been acted upon, he entered an interlocutory order directing the appropriate officers and committees of defendant hospital to take those steps in connection with this second application as were required pursuant to rules and regulations adopted under the bylaws. The interlocutory order entered February 4, 1966, also authorized the parties to make any amendment to their pleadings necessitated by the resulting action of such appropriate authorities. In due course, plaintiff's second application was considered by the Credentials, Staff Executive and Medical Committees and the Board of Trustees, successively. Each authority voted not to approve the second application, and although plaintiff states that neither the named committees nor the Board of Trustees gave any reason for their actions, the relevant records disclose that in connection with their respective votes, the named authorities directed the hospital to seek an applicant versed in urology.

The plaintiff further supplemented his complaint on February 14, 1966, as authorized by the interlocutory order of February 4, 1966, and defendants filed answers conformable to their positions that the amended complaint set forth no grounds entitling plaintiff to relief.

The material averments of the supplemented complaint are, in substance: that the action of the trustees in denying plaintiff's applications for staff membership is arbitrary and capricious, and as such violative of the equal protection clause of the 14th Article of Amendments to the Constitution of the United States; and that defendants engaged in a tortious conspiracy in restraint of trade by combining to

deprive plaintiff of staff membership, notwithstanding his professional qualifications.

By reason thereof, plaintiff seeks to have defendants ordered to grant his application and damages awarded for loss of earnings and other injuries resulting from the alleged conspiracy.

A threshold consideration of the redress for which plaintiff sues involves a question of first impression in this jurisdiction — namely, are the actions of the trustees of a private hospital taken in connection with those matters upon which they are empowered to act, subject to judicial review? Fully cognizant of this, the trial justice, in a searchingly discursive rescript, considered the voluminous documentary and extensive oral evidence, reviewed reported cases of our sister states and of federal jurisdiction,[1] determined that defendant hospital was a private charitable institution and, applying what clearly appears to be the majority rule, held that the actions of defendant trustees of which plaintiff complained were not subject to judicial inquiry. On this determination, he denied and dismissed plaintiff's complaint.

In so doing, however, he made findings of fact which although not essential to his decision in the view he took

---

[1] In determining that notwithstanding its tax-exempt status, donations or subventions for the care of the sick from the state and municipalities, as well as Hill-Burton funds from the federal government as authorized under 42 U.S.C.A. §291 et seq., defendant hospital was not transformed from a private into a public institution, the trial justice cites: *Van Campen* v. *Olean General Hospital,* 210 App. Div. 204, 205 N.Y.S. 554 (1924); Aff'd 239 N. Y. 615, 147 N.E. 219 (1925); *Khoury* v. *Community Memorial Hospital, Inc.,* 203 Va. 236, 123 S.E.2d 533 (1962); *Edson* v. *Griffin Hospital,* 21 Conn. Sup. 55, 144 A.2d 341 (1958).

He predicated his determination that the decisions of the Trustees of a private hospital are not subject to judicial review on the authority of *State ex rel. Sams* v. *Ohio Valley General Hospital Ass'n* (West Va.), 140 S.E.2d 457 (1965); *Shulman* v. *Washington Hospital Center,* 222 F. Supp. 59; *West Coast Hospital Ass'n* v. *Hoare* (Fla.), 64 So.2d 293 (1953); and cases collected in 26 Am. Jur., Hospitals and Asylums, §9, p. 592.

of the threshold question, were made for the benefit of this court in the event that on an appeal from his decision such findings would become material. This is a practice with which we are in full accord. It has the manifest virtue of expediting litigation in a given case, substantially reducing the period of time that the parties would otherwise await a determination of the merits of the controversy should the trial justice be in error as to the preliminary question. Consistent with our rule regarding findings of fact made by a trial justice sitting without a jury, such findings made for the benefit of this court are entitled to great weight and will not be disturbed unless clearly wrong.

The first of several contentions that plaintiff makes in support of his appeal relate to the right of judicial review, and in this connection he makes two arguments. His first argument is that, conceding the existence of a long prevailing distinction between the rules applicable to public hospitals in connection with which it is universally held that judicial review may be had — and private hospitals where it is almost universally held that there is no right of judicial review — this court should abandon the public-private hospital approach in favor of the more enlightened view. In support of this argument, plaintiff cites *Greisman* v. *Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817, wherein the New Jersey court appears to hold that the trustees of a private hospital which functions at least in substantial part through charitable donations publicly solicited are fiduciaries whose actions taken in connection with the purposes the hospital serves are so cloaked with a public interest as to call for close scrutiny by the courts in proper cases. Further, whether the rejection of a professionally qualified doctor for admission to the staff was arbitrary or capricious seems to have been considered a question for review by the New Jersey court. To the same effect plaintiff cites *Woodard* v. *Porter Hospital, Inc.*, 125 Vt. 419, 217 A.2d 37 (1966).

His second argument on the issue of judicial review is that, even when adhering to the public-private hospital approach, judicial review of the actions of the trustees of a private hospital is available when that hospital, as is the case here, is the recipient of Hill-Burton funds, citing *Sams v. Ohio Valley General Hospital Ass'n,* 257 F. Supp. 369 (1966). There, in passing on defendant's motion to dismiss for lack of jurisdiction by reason of immunity from judicial review, the Ohio court held that the acceptance of Hill-Burton funds, distributed by a state agency which exercised control in the supervision of construction, brought the defendants within the rule of state action and subject to the jurisdiction of the court by reason of the due process and equal protection guarantees of the 14th Article of Amendments to the Constitution of the United States.

Assuming, however, that this court were to adopt a rule establishing a right to judicial review of the actions of trustees of private hospitals, at least where such actions are of public concern, it would be unavailing to plaintiff unless there were merit in his other contentions, and of this we are not persuaded.

It is apparent from the facts heretofore related that plaintiff received due process. The defendants processed each of the two applications for staff membership made by plaintiff and did so according to and in compliance with art. III, sec. 4, of the Rules and Regulations of the Professional Staff. Furthermore, following the rejection of his first application, plaintiff was given a hearing before the Staff Executive Committee as provided by art. VIII, sec. 6, of the bylaws and, on an appeal from their decision, was accorded a hearing before the Board of Trustees at which he was represented by counsel as provided by the cited section of the bylaws. He requested no hearings in connection with his second application.

Indeed, in reaching his decision, the trial justice noted

that plaintiff was not complaining that defendants had violated their own bylaws. He made this observation in connection with pointing out the plenary power of control vested in the Board of Trustees pursuant to section 5 of the charter and the state approval of such power as expressed in the Rhode Island State Plan for the construction of hospitals and other health facilities promulgated in accordance with G. L. 1956, §23-16-10.

The plaintiff concedes that the trial justice was correct in finding that no issue existed as to compliance by defendants with the applicable provisions of the Rules and Regulations of the Professional Staff and the bylaws. But he vigorously contends that the trial justice did misconceive the thrust of plaintiff's position and overlooked the basic issue. Article VIII, sec. 6, of the bylaws, after providing for a hearing before the Board of Trustees as aforesaid further provides " * * * and the decision of the Board of Trustees on the matter heard shall be final and not subject to further review." It is the gravamen of plaintiff's complaint that the finality of the Trustees' decision is not binding on the courts when such decision is an arbitrary or capricious disposition of the rights of one entitled to appeal to the Board of Trustees. To hold otherwise, plaintiff argues, would constitute a denial of equal protection.

In this connection it is plaintiff's contention that the decision of the Board of Trustees was arbitrary, capricious and unreasonable in that plaintiff's applications were rejected in fulfillment of a conspiracy to protect the financial interests of defendant, Dr. Lenz, and because of plaintiff's alignment with doctors hostile to administration policies, as well as his attempt to promote judicial interference.

The trial justice found as a fact that there was no tortious conspiracy on the part of defendants, and that none of them held personal malice against plaintiff. From his

review of the evidence and evaluation thereof as it appears when his rescript is read in its entirety, we cannot say that this finding is clearly wrong.

Summing up the evidence as he viewed it, aided as he was by the opportunity to observe the parties as they testified, catching nuances not discernible from the printed word, the trial justice found that defendant trustees had rejected plaintiff's applications "* * * because of a personality clash with the hospital administrator in the first instance, because of a preference for Dr. Grimaud in the second instance, and because it was felt by the Board of Trustees that he might be a potential disruptive force in the Hospital in the third instance."

The record is replete with evidence of incidents involving personality clashes from which the trial justice could draw the inference that the Trustees were motivated in their decision on each application by a desire to avoid the creation of a hospital ambience not conducive to the best interests of the sick and injured for whose welfare the hospital existed.

If, as plaintiff argues, the evidence from which the trial justice's inference was drawn is open to the equally reasonable inference that personal animus rather than concern for a harmonious hospital atmosphere prompted his rejection, plaintiff takes nothing thereby since this court will not, by reason of alternative choices, set aside the inference drawn by the trier of fact, if reasonable. *Labbe v. Hill Brothers, Inc.*, 97 R. I. 269, 197 A.2d 305.

When the motivating circumstances of a decision made to achieve a valid purpose bear a reasonable relationship to the purpose intended to be achieved by the decision, such decision will not be disturbed by the courts as being arbitrary, capricious or unreasonable within the meaning of the equal protection guarantee. See *Imperial Car Rental Corp. v. Lussier*, 97 R. I. 168, 196 A.2d 728.

Moreover, there is here, and the trial justice so found, the added desire of the hospital authorities to obtain the services of a surgeon having a particular interest in urology. The trial justice found as a fact that at the time the applications of plaintiff and Dr. Grimaud were under consideration, neither man was more qualified than the other with regard to genito-urinary diseases, but that Dr. Grimaud did express a particular interest in training for urology; whereas plaintiff had no such interest.

Neither is there merit in plaintiff's further contention that defendants are estopped from denying him staff membership, especially with regard to his second application.

The record establishes that Dr. True, at the time he was chief of surgery, advised and encouraged plaintiff to take up residency in surgery and, it would appear, other doctors were likewise encouraging. The trial justice found as a fact, however, and plaintiff candidly admits, that no such encouragement emanated from the Board of Trustees within whom the power to make final decisions on staff membership is vested. Even so, plaintiff further argues, the recommendation of the Board in connection with the denial of his first application, to wit, that plaintiff be favorably considered when a vacancy next occurred, effectively estopped them from denying his second application made after it became apparent that Dr. Grimaud had declined appointment.

However, in connection with his claim for damages for loss of earnings and to his reputation and for humiliation resulting from the alleged tortious conspiracy, plaintiff relies heavily on defendant Dr. Lenz's report to the staff and letter to plaintiff in both of which Dr. Lenz lays great stress on the economics involved in selecting staff members. From these and oral evidence, plaintiff urges the inference that because of his admitted skills, and popularity with other doctors with the likelihood of referrals, Dr. Lenz's decision

to reject plaintiff, and his recommendation in this regard to the Credentials and Staff Executive Committees was motivated and abetted by the other defendants out of a desire to protect Dr. Lenz's financial interest. But it is readily apparent from the evidence on which plaintiff relies that a serious question existed as to the advisability or necessity of adding two surgeons to the staff of a hospital with only 80 beds. The documentary evidence on which plaintiff relies discloses that in addition to plaintiff and Dr. Grimaud, an application was under consideration from still another surgeon. It is clear that in the minds of all concerned with the admission of staff members, there was a need for only one additional man. Doctor True, the record discloses, although no longer Chief of Surgery was remaining on the staff. The emphasis on the additional man finally turned on the question of that man's interest in urology.

Thus, when in connection with denying plaintiff's first application the Trustees recommended favorable consideration for plaintiff in the event of a vacancy on the staff or the admission of still an additional member, they did not intend thereby to minimize the desire for a man with a particular interest in urology. When the vacancy that did occur resulted from Dr. Grimaud's decision not to accept his appointment, it was not a "vacancy" within the contemplation of the Trustees when they recommended favorable consideration for a subsequent vacancy. Indeed, the minutes of the Trustees' meeting held in connection with plaintiff's second application clearly manifest that their decision on this occasion was consistent with their prior decision. In such circumstances no grounds exist to support plaintiff's invoking of the estoppel doctrine.

From the conclusions reached in connection with the plaintiff's contentions heretofore considered and the trial justice's finding of no tortious conduct, it is readily apparent that plaintiff's claim for damages is likewise unfounded.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

Motion for leave to reargue denied.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for plaintiff.

*Boss, Conlan, Keenan & Rice, James M. Shannahan,* for defendants.