William J. Mauer, Jr., D.O., Plaintiff-Appellant, v. The
Highland Park Hospital Foundation, an Illinois Not-
For-Profit Corporation, et al., Defendants-Appellees.

Gen. No. 67–47.

Second District.

December 27, 1967.

Daniel A. Costigan, and James B. Martin, of Chicago, for appellant.

Snyder, Clarke, Dalziel, Holmquist and Johnson, of Waukegan, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

Plaintiff is an osteopathic physician and surgeon duly licensed by the State of Illinois. He is a graduate of the Chicago College of Osteopathy, and maintains offices in the City of Chicago and in the Village of Deerfield. On December 22, 1964, plaintiff filed his application for membership on the medical staff of the Highland Park Hospital, a private institution serving the area of plaintiff's Deerfield office. The bylaws of the medical staff specified at that time that members must be Fellows of the American Medical Association. The plaintiff did not meet this qualification, and was denied membership.

The original complaint herein sought a declaratory judgment that this qualification of the bylaws was void and invalid. Shortly after the complaint was filed, the bylaws were amended to eliminate this requirement, and the substituted provision generally stated, among other things, that the applicant "shall have qualifications which have been approved by the Credentials Committee and the Board of Managers." Other qualifications were specified, but are not here in dispute.

As a result of the elimination of the challenged bylaw provision, the original complaint was dismissed on defendant's motion. The plaintiff thereupon applied once more for membership to the hospital's medical staff, asking that his original application be reconsidered in view of the amended bylaws, and stating that the information submitted with the original application was to apply. This information included the names of two practicing physicians in the area as references. When he was again denied membership on the medical staff, plaintiff filed his amended and supplemental complaint praying for a declaratory judgment that the denial of his application was void, invalid and discriminatory.

With their motions to dismiss both the original and the amended and supplemental complaints, defendant submitted the affidavits of the hospital's administrator. The facts set forth in these affidavits and in the exhibits thereto were not challenged by any counteraffidavits, and were essentially as follows: two days after requesting the reconsideration of his application, plaintiff was notified that his application would be reconsidered in the regular course of staff business; on the same day the administrator sent letters to the two physicians named as references in the application, which letters requested comments on plaintiff's "capabilities, ethical relationships, attitude, and general community standing"; both of these physicians responded with letters stating that they

411

were unable to comment or pass judgment on plaintiff's medical capabilities because of their minimal contacts with the plaintiff; plaintiff's application disclosed that his premedical education was at the United States Naval Academy, where he did not receive a degree, and that he partook of no educational activities from 1939 until his entrance into the Chicago College of Osteopathy, from which he graduated in 1956; letters of inquiry were sent to each of the organizations and institutions listed in plaintiff's application; within three weeks of his request for reconsideration, plaintiff was interviewed by the Medical Executive Committee and questioned as to his qualifications, but he furnished no additional information or references other than those contained in the application itself; all of the staff members were notified that plaintiff's application would be on file for thirty days in the office of the administrator; the Medical Executive Committee thereafter met and unanimously resolved that plaintiff not be approved for sponsorship; the Board of Managers of the Highland Park Hospital Foundation, one of the defendants herein, subsequently met and approved the decision of the Medical Executive Committee, the minutes of which meeting stated, inter alia, that the rejection was based on the failure of plaintiff's application and supporting documents to show his qualifications for staff membership, and on the fact that the physicians given by plaintiff as references did not have knowledge that his medical capabilities were of sufficient quality to justify membership on the staff. Finally, the unchallenged affidavits show that every action taken relative to plaintiff's application was in accordance with the normal and customary procedures followed with respect to all such applications.

From the trial court's dismissal of the amended and supplemental complaint, the plaintiff appeals to this court.

■ It is a well-settled rule that a private hospital has the right to refuse to appoint a physician or surgeon to

412

its medical staff, and this refusal is not subject to judicial review; the decision of the hospital authorities in such matters is final. State ex rel. Sams v. Ohio Valley General Hospital Ass'n, 149 W Va 229, 140 SE2d 457, 462 (1965); Shulman v. Washington Hospital Center, 222 F Supp 59, 63 (DC 1963); Khoury v. Community Memorial Hospital, Inc., 203 Va 236, 123 SE2d 533, 539 (1962); Manczur v. Southside Hospital, 16 Misc2d 989, 183 NYS2d 960, 961 (1959); Levin v. Sinai Hospital of Baltimore City, 186 Md 174, 46 A2d 298, 301 (1946).

The plaintiff readily concedes the general rule, but argues that he should not be bound thereby for three reasons: (1) the increasing use of public funds by private hospitals impresses a public interest upon these institutions, thereby "requiring a reevaluation of the rule and either its modification or outright repudiation"; (2) adherence to the general rule would tend to create a monopoly in the hands of the doctors comprising the medical staff of the hospital in question; and (3) the defendants allegedly assigned no reason for the rejection of plaintiff's application for staff membership.

■ ■ We observe from a review of the authorities that plaintiff's first contention is by no means a novel one. While a *public* hospital's action in rejecting an application for staff membership may be judicially reviewed to determine if the rejection was arbitrary, capricious or unreasonable, (see State v. Ohio Valley General Hospital Ass'n, supra, 140 SE2d at page 463) the acceptance and use of certain public funds does not magically convert a private hospital to a public one. Thus, in Shulman v. Washington Hospital Center, supra, it was stated at page 61:

> "The fact that a private hospital may receive donations or subventions from the Government, or compensation from a city or county for caring for sick or disabled indigent persons, does not transform it

413

into a public institution, Van Campen v. Olean General Hospital, 210 App Div 204, 205 NYS 554, 556, affirmed 239 NY 615, 147 NE 219. Similarly, the circumstance that it was constructed with the aid of Government funds, as is the case in this instance, does not detract from its status as a private hospital."

A similar holding was seen in Khoury v. Community Memorial Hospital, Inc., supra, at page 538, where more than half of the cost of the original hospital building and a subsequent addition were financed by State and Federal public funds. In the case before us, the Highland Park Hospital received only $26,000 in Federal funds toward the construction of an addition to one building which cost over $1,000,000 and $326,000 in Federal funds toward an expenditure in excess of $2,000,000 for another building. The receipt of public funds toward its overall operational (nonbuilding) expenses, as reflected in its annual budget, is virtually nonexistent.

The plaintiff further points out that the Highland Park Hospital is a not-for-profit corporation and enjoys a tax-free status. These facts have similarly been held insufficient to render as public an otherwise private hospital. State v. Ohio Valley General Hospital Ass'n, supra, at page 461.

Plaintiff asks this Court to "modify" or "repudiate" the general doctrine reiterated and adhered to by the foregoing decisions, notwithstanding that this doctrine is supported by "the overwhelming weight of authority, almost approaching unanimity." Shulman v. Washington Hospital Center, supra, at page 63. However, the only reason the plaintiff gives in his request that we dishonor established law, namely, that the enjoyment of public funds and the tax-free status of the hospital impresses it with a public interest requiring judicial review of internal decisions, has *itself* been dishonored and repudiated

by the decided cases. We elect to follow the teaching of these cases, and we refuse to substitute our judgment for that of the hospital authorities regarding the acceptance of plaintiff for staff membership in a private hospital. Indeed, this doctrine is all the more fitting by virtue of the current Illinois law imposing potential liability on a hospital for the imprudent or careless selection of its staff members, without limitation to the amount of its liability insurance. Darling v. Charleston Community Memorial Hospital, 33 Ill2d 326, 337–338, 211 NE2d 253 (1965).

█ Equally untenable is plaintiff's theory that the application of the now settled law would create an unlawful monopoly in the hospital's medical staff. There is no showing as to the number of doctors on the staff, nor is there anything in the record to suggest the proportion of staff members to nonstaff doctors in the hospital's service area. We presume the plaintiff realized that the Highland Park Hospital was one of the only hospitals in the area when he chose to open his Deerfield office. In any event, the plaintiff cites Illinois Hospital Service, Inc. v. Gerber, 18 Ill2d 531, 537, 165 NE2d 279 (1960), a case dealing with the constitutionality of a statute delegating certain powers to hospitals without specifying standards. We cannot see that the rationale of the Gerber case could be borrowed and applied to the instant case, particularly in view of the settled law discussed above. Likewise, plaintiff's reliance on Greisman v. Newcomb Hospital, 40 NJ 389, 192 A2d 817 (1963), is misplaced. Although the opinion in that case used the term "monopoly" in connection with a hospital and its staff members, the court noted at page 824:

> "It must be borne in mind that we are not asked to pass on a discretionary exercise of judgment but only on the validity of the by law requirement."

The bylaw in question required graduation from a school approved by the American Medical Association, which would automatically disqualify the graduate of any school of osteopathy without regard to the individual applicant.

Finally, we turn to plaintiff's protest that no reason was assigned for the rejection of his application. This is somewhat surprising in view of plaintiff's concession that, under existing law, private hospitals may exclude physicians from staff membership *without* assigning reasons therefor. Be that as it may, the official minutes of defendant's Board of Managers specifically stated that the plaintiff was rejected because his application and supporting documents did not show his qualifications, and that the physicians named as references had no knowledge of his medical capabilities. Assuming that plaintiff was entitled to be advised of the reasons for his rejection, the failure to be so advised would not necessarily be grounds for overturning his rejection; his remedy would be the right to be told of the reasons, and note the right to automatically become a staff member.

For the reasons stated, we conclude that the trial court properly dismissed the amended and supplemental complaint and entered judgment for the defendants.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.