WILLIAM BARROWS, Plaintiff-Appellant, v. NORTHWESTERN MEMO-
RIAL HOSPITAL *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—3304

Opinion filed March 5, 1987.

Wayne B. Giampietro and James B. Dykehouse, both of Chicago (De-Jong, Poltrock & Giampietro, of counsel), for appellant.

Michael J. Koenigsknecht and Thaddeus J. Nodzenski, both of Chicago (Gardner, Carton & Douglas, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, William Barrows, appeals from an order of the circuit court of Cook County dismissing his complaint against defendants, Northwestern Memorial Hospital; John J. Boehm, chairman of the hospital's pediatrics service; James R. Hines, chief of staff at the hospital; and James A. Stockman III, chairman of the hospital's department of pediatrics. The court dismissed the complaint as being substantially insufficient at law in violation of section 2—615(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(a)).

We reverse and remand.

■ In determining whether to allow a motion to dismiss, a court must take allegations of fact contained in the complaint as true and construe all reasonable inferences therefrom in the plaintiff's favor.

(*Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 1057, 341 N.E.2d 13, 15.) Plaintiff, a physician, alleged that defendants denied his application for staff privileges at the hospital although he had met all of the qualifications for admission to the staff.

Plaintiff alleged that he and a medical associate are pediatricians. They had a working relationship with a group of obstetrical-gynecological (ob-gyn) physicians; they would treat babies born to the patients of the ob-gyn physicians immediately after birth. In January 1984, defendants granted the ob-gyn physicians admission to the staff of Prentice Hospital, a facility which defendants operate; the ob-gyn physicians transferred their affiliation to Northwestern Memorial Hospital.

Plaintiff and his associate subsequently applied for admission to the staff of Northwestern Memorial. Plaintiff alleged that Boehm stated to Hines in a letter that the hospital's pediatrics department did not need another pediatrician of plaintiff's particular background and expertise. Defendants thereafter notified plaintiff that they denied his application for admission to the hospital staff. Plaintiff then complained to defendants that their bylaws allowed him to appear and to be heard. Defendants then granted plaintiff a meeting, after which they again denied his application.

Plaintiff further alleged that defendants based their denial of staff privileges on their unwritten rule: a physician receives staff privileges only if he or she has a business relationship with a doctor already on defendants' staff. As a result of this unwritten rule, defendants admitted two other physicians to the hospital staff with no better qualifications than those of plaintiff, at the same time that defendants denied plaintiff such privileges.

Plaintiff alleged in count I of the complaint that defendants were aware of the relationship between him and the ob-gyn physicians. He further alleged that defendants denied him admission to their staff in order to interfere with this relationship and to deprive him of his source of patients. Plaintiff also alleged that defendants conspired to deprive him of patients who would choose him to treat their children and that this conspiracy deprived him of his legitimate expectation of business relationships with those patients.

Count II of the complaint alleged that defendants' conduct limited the supply of pediatric services in Chicago and unreasonably restrained trade and commerce in the State, violating section 3 of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3). Plaintiff alleged in count III that defendants' unwritten rule controlling the granting of staff privileges violates the hospital's rules, regula-

tions, and bylaws. Defendants' unwritten rule, thus, constitutes fraud on plaintiff. Count IV alleged that defendants' conduct also violated the public policy of Illinois, evidenced by section 3—4 of the Illinois Health Finance Reform Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6503—4) and Rule 3—1.1 of the Illinois Department of Public Health.

Plaintiff sought an injunction preventing defendants from enforcing their unwritten rule and, based on the rule, refusing to admit him to their staff. Plaintiff further sought $15,000 in actual damages and an amount of punitive damages for the trial court to determine. Plaintiff also sought a finding of wilful conduct and treble damages under counts II, III, and IV, pursuant to section 7 of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—7).

Plaintiff filed the complaint on March 5, 1985. On November 6, 1985, the trial court granted defendants' motion to dismiss. The court ruled that the complaint did not state a cause of action. Plaintiff appeals.

■ Pleadings present, define, and narrow the issues and limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. The object of pleadings is to produce an issue that one side asserts and the other side denies, so that a trial may determine the actual truth. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307-08, 430 N.E.2d 1005, 1008.) Attacking defects in pleadings points out the defects so that the complainant will have an opportunity to cure them before trial. The granting of a motion to strike and dismiss is within the sound discretion of the trial court. *Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 586, 440 N.E.2d 1022, 1025.

I

■ Plaintiff claims that the trial court erred in finding that his complaint was substantially insufficient at law. Explaining this pleading requirement, our supreme court stated:

"To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed. [Citation]." *People ex rel.*

· *Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009.

Plaintiff contends that he set forth legally recognized claims against defendants. Defendants, however, invoke the rule of nonreview, upon which the trial court based its dismissal. The rule is that a private hospital's refusal to appoint a physician to its medical staff is not subject to judicial review. (*Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 412-13, 232 N.E.2d 776, 778.) The rationale behind the rule is the court's unwillingness to substitute its judgment for that of private hospital authorities. 90 Ill. App. 2d 409, 415, 232 N.E.2d 776, 779.

Two exceptions to the rule of nonreview have developed in Illinois. First, our courts can review the application procedures of a private association when membership in the organization is an economic necessity. (*Treister v. American Academy of Orthopaedic Surgeons* (1979), 78 Ill. App. 3d 746, 755, 396 N.E.2d 1225, 1231.) Second, where a private hospital revokes or reduces a physician's existing staff privileges, the hospital must follow its own bylaws in so doing or be subject to limited judicial review. *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 425, 385 N.E.2d 108, 112.

Plaintiff presents two alternate arguments. He first contends that his action falls within the economic-necessity exception to the rule of nonreview. Plaintiff secondly asks us to reevaluate the efficacy of the rule itself. We address the second contention first.

## II

We must address a preliminary issue before we can reevaluate the efficacy of the rule of nonreview of a private hospital's denial of a physician's application for staff membership. We must first determine whether the Illinois Supreme Court has addressed this exact issue, because where our supreme court has declared Illinois law on any point, that court alone can overrule and modify its previous opinion; such a decision binds all other judicial tribunals in this State, and it is the duty of those tribunals to follow such a decision in similar cases. *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867; *Stopka v. Lesser* (1980), 82 Ill. App. 3d 323, 326, 402 N.E.2d 781, 783.

■ The appellate court first recognized the rule of nonreview in *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 232 N.E.2d 776. This court has acknowledged the rule in several subsequent cases (*e.g., Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1986), 140 Ill. App. 3d

442, 456, 488 N.E.2d 685, 695; *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 256, 465 N.E.2d 554, 563; *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 216, 408 N.E.2d 981, 984). Our supreme court has not addressed the issue. Since the appellate court adopted the rule of nonreview of a private hospital's denial of a physician's application for staff membership, it is free to modify and interpret the doctrine to correspond with prevalent considerations of public policy and social needs. *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.

## III—A

■ We begin our reevaluation of the rule of nonreview of a private hospital's denial of a physician's application for staff membership by reviewing the rationale of the rule. According to the courts that adopted the rule of nonreview, the difference between a public and private hospital is central to the rule's rationale. A public hospital is one that a governmental unit owns, maintains, operates, and supports with government funds. A private hospital, however, is one that a corporation or an individual owns, maintains, and controls without any participation by any governmental agency. (*Shulman v. Washington Hospital Center* (D.C. 1963), 222 F. Supp. 59, 61.) The test is whether, under the charter or corporate powers that the legislature grants, the hospital has the right to elect its own officers and directors, with the power to manage its own affairs. *Edison v. Griffin Hospital* (1958), 21 Conn. Sup. 55, 58, 144 A.2d 341, 344.

If the hospital is private, then the fact that the hospital is for the public benefit and not for profit does not detract from its character as a private institution. (*Shulman v. Washington Hospital Center* (D.C. 1963), 222 F. Supp. 59, 61, quoting *Levin v. Sinai Hospital* (1946), 186 Md. 174, 178, 46 A.2d 298, 300-01.) Further, the fact that a private hospital receives public funds does not transform it into a public hospital. (*Shulman v. Washington Hospital Center* (D.C. 1963), 222 F. Supp. 59, 61, quoting *Khoury v. Community Memorial Hospital, Inc.* (1962), 203 Va. 236, 244, 123 S.E.2d 533, 538.) We note that our supreme court recognized the distinction between public and private institutions in an early case that did not involve the availability of judicial review of a private hospital's denial of a physician's application for staff membership. *Washingtonian Home v. City of Chicago* (1895), 157 Ill. 414, 421-25, 41 N.E. 893, 895-96.

The courts that adopted the rule of nonreview found that private hospitals were private institutions. Further, they acknowledged the general rule that courts of equity would not interfere with the inter-

nal management of a corporation unless the act complained of was fraudulent, illegal, or *ultra vires*. They held, therefore, that "a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests within the sound discretion of the managing authorities." *Levin v. Sinai Hospital* (1946), 186 Md. 174, 179-80, 46 A.2d 298, 301, quoted in *Shulman v. Washington Hospital Center* (D.C. 1963), 222 F. Supp. 59, 63.

## III—B

■ We agree, however, with the New Jersey Supreme Court that "while the managing officials [of a private hospital] may have discretionary powers in the selection of the medical staff, those powers are deeply imbedded in public aspects, and are rightly viewed, for policy reasons *** as fiduciary powers to be exercised reasonably and for the public good." (*Greisman v. Newcomb Hospital* (1963), 40 N.J. 389, 402, 192 A.2d 817, 824.) We also agree with the Hawaii Supreme Court that the discretionary power of a hospital is not absolute and that a decision of a private hospital in refusing to grant a licensed physician staff privileges is subject to judicial review. "The better rule provides that such review be available as to whether the doctor excluded was afforded procedural due process, and as to whether an abuse of discretion by the hospital board occurred, resulting in an arbitrary, capricious or unreasonable exclusion." (*Silver v. Castle Memorial Hospital* (1972), 53 Haw. 475, 479-80, 497 P.2d 564, 568.) We also note that a growing number of jurisdictions subscribed to this view. 53 Haw. 475, 479 n.5, 497 P.2d 564, 568 n.5; Annot., 37 A.L.R.3d 645 (1971).

The New Jersey Supreme Court first voiced the basis of the departure from the traditional rule in *Greisman v. Newcomb Hospital* (1963), 40 N.J. 389, 192 A.2d 817. The court in *Greisman* held that "a private nonprofit hospital, which receives part of its funds from public sources and through public solicitation, which receives tax benefits because of its nonprofit and non-private aspects and which constitutes a virtual monopoly in the area in which it functions, is a 'private hospital' in the sense that it is nongovernmental, but that it is in no position to claim immunity from public supervision and control because of its private nature." *Davidson v. Youngstown Hospital Association* (1969), 19 Ohio App. 2d 246, 250, 250 N.E.2d 892, 895, relying on *Greisman v. Newcomb Hospital* (1963), 40 N.J. 389, 192 A.2d 817.

We recognize the distinction between public and private institutions that our supreme court explained in *Washingtonian Home v.*

*City of Chicago* (1895), 157 Ill. 414, 421-25, 41 N.E. 893, 895-96. However, we agree with the Supreme Court of New Jersey, which stated in *Greisman*:

> "Hospital officials are properly vested with large measures of managing discretion and to the extent that they exert their efforts toward the elevation of hospital standards and higher medical care, they will receive broad judicial support. But they must never lose sight of the fact that the hospitals are operated not for private ends but for the benefit of the public, and that their existence is for the purpose of faithfully furnishing facilities to the members of the medical profession in aid of their service to the public. They must recognize that their powers, particularly those relating to the selection of staff members, are powers in trust which are always to be dealt with as such. While reasonable and constructive exercises of judgment should be honored, courts would indeed be remiss if they declined to intervene where, as here, the powers were invoked at the threshold to preclude an application for staff membership, not because of any lack of individual merit, but for a reason unrelated to sound hospital standards and not in furtherance of the common good." 40 N.J. 389, 403-04, 192 A.2d 817, 825.

Further, it is not necessary to find monopoly or deprivation of all economic opportunity before there is a case for judicial review. "*Greisman* indicates that since the function of the private organization in question is public, judicial review is available to hold said organization to conduct becoming a fiduciary." *Sussman v. Overlook Hospital Association* (1966), 92 N.J. Super. 163, 176, 222 A.2d 530, 537, *aff'd* (1967), 95 N.J. Super. 418, 231 A.2d 389.

■ Applying these principles to the instant case, we reverse the trial court's dismissal of the complaint and hold, as did the Vermont Supreme Court in *Woodard v. Porter Hospital, Inc.* (1966), 125 Vt. 419, 217 A.2d 37, that "the authorities of a private hospital are vested with broad discretionary powers in the selection of its medical and surgical staffs. If the exclusion therefrom is based on a sound and reasonable exercise of discretionary judgment the courts will not intervene. On the contrary, if it stems from unreasonable, arbitrary, capricious or discriminatory considerations, relief will be available in the courts of equity." 125 Vt. 419, 423, 217 A.2d 37, 40.

■ Further, a court cannot determine "whether a hospital's trustees have discharged their fiduciary duty in acting upon applications for staff appointment *** by merely ascertaining whether the

trustees have complied with the by-laws. Such by-laws may be self-serving to those in power, and a court should not hesitate in promoting natural justice to fill any gaps in a hospital's rules." *Sussman v. Overlook Hospital Association* (1966), 92 N.J. Super. 163, 177, 222 A.2d 530, 537-38, *aff'd* (1967), 95 N.J. Super. 418, 231 A.2d 389.

## IV

We address, lastly, what the trial court should do with this cause on remand. In his complaint, plaintiff pleaded actions in interference with contractual relationship, antitrust, fraud, and violation of public policy. Section 2—616(a) of the Code of Civil Procedure states, in pertinent part, as follows:

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms ***, and in any matter, either of form or substance ***, which may enable the plaintiff to sustain the claim for which it was intended to be brought ***." Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a).

■ Although the amendment of pleadings is addressed to the sound discretion of the trial court, it should apply the greatest liberality in allowing amendments, with the paramount consideration being whether the amendment furthers the interest of justice. (*First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30, 31.) On remand, therefore, the trial court should grant plaintiff leave to amend his complaint to reflect the views expressed in this opinion.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LINN and CAMPBELL, JJ., concur.