STATE *Ex Rel.* JAMES E. SAMS

v.

OHIO VALLEY GENERAL HOSPITAL ASSOCIATION,
A CORPORATION, *Etc.*

(No. 12361)

Submitted January 13, 1965.     Decided February 23, 1965.

*McCamic & Tinker, Jeremy C. McCamic,* for relator.

*Chester R. Hubbard, John D. Phillips,* for respondent.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioner, James E. Sams, a physician and surgeon, seeks to compel the respondent, Ohio Valley General Hospital Association, to appoint him to the medical staff of the respondent hospital or, in the alternative, to afford him a hearing with respect to his application for staff membership and the refusal thereof. On July 13, 1964, a rule was granted by this Court returnable September 8, 1964. An extension was granted to October 6, 1964, and finally, for the purpose of taking evidence, the hearing date of this matter was continued to January 13, 1965. Depositions were taken on behalf of the parties and numerous exhibits were filed. On January 13, 1965, this matter was submitted for decision upon the petition, the answer and demurrer thereto, the depositions and exhibits, the reply to the answer, and upon the briefs and arguments of counsel.

The petitioner, James E. Sams, is a physician and surgeon duly licensed to practice medicine in the State of West Virginia. He is also licensed to practice his profession in Ohio, Texas, Pennsylvania and Mississippi. In his deposition Doctor Sams testified that he received his degree in medicine from Tulane University in 1937; that as a general practitioner, he received a commission in the regular army in 1940; and that he remained in the army until 1962. During his army career he was a general practitioner until 1946,

when he entered into training as a specialist in pediatrics and gynecology. Upon the completion of this specialty he served as the chief of the department of obstetrics and gynecology in several army hospitals. In 1959 he was certified by the American Board of Obstetrics and Gynecology as a specialist in that field. Doctor Sams retains this board certification at the present time. No question appears to exist in this proceeding as to his competency as a doctor or his qualification as a member of the medical profession.

Upon his retirement from the army in March, 1962, Doctor Sams established his residence in Wheeling and began to practice his profession in Bellaire, Ohio. He stated that, in addition to the respondent hospital, he has applied for staff privileges at the Wheeling Hospital in Wheeling, West Virginia, Reynolds .Memorial Hospital in Glendale, West Virginia, and the City Hospital in Bellaire, Ohio, but that in each instance staff privileges have been refused. It was the refusal of such privileges by the respondent that gave rise to this proceeding.

By application dated February 13, 1963, the petitioner applied for appointment to the medical staff of the respondent hospital. This application was considered and, by letter dated May 27, 1963, signed by M. B. Williams, M. D., Medical Director, the petitioner was informed that "under our Medical Staff Bylaws, Rules and Regulations you are not eligible for appointment to our Medical Staff". Further attempts to accomplish his aim being unsuccessful, the petitioner, on July 7, 1964, instituted this proceeding.

The Ohio Valley General Hospital Association, the respondent herein, is a corporation created and organized under the laws of the State of West Virginia. As such it established and maintains and operates the hospital involved in this proceeding. The corporate charter states that it was organized "exclusively for charitable, scientific and educational purposes as a not-for profit corporation". The management of its affairs is vested in a board of trustees elected by the members of the association. The hospital maintained by the respondent corporation is operated from funds derived from fees charged for the care and hospitalization of

patients, private charitable contributions and payments made by the state and county for the treatment of indigent patients. For the purpose of expanding its facilities the respondent has, on several occasions, applied for and received funds from the federal government under the provisions of 42 U.S.C., Section 291, et seq., more commonly known as the Hill-Burton Act.

It is urged on behalf of the petitioner that the Ohio Valley General Hospital is in fact a public hospital and that its action, questioned in this proceeding, is therefore subject to judicial control. In support of this position the petitioner relies principally on three factors. First, the respondent is affected with a public interest, its property being devoted to public use and subject to state licensing and regulation; second, it is a public charitable hospital by reason of its charitable immunity and exemption from the payment of real and personal property taxes; and, third, it has been a recipient of public monies under the provisions of the Hill-Burton Act.

The respondent, on the other hand, contends that the hospital which it operates is a private hospital and that matters concerning the appointment of the medical staff thereof are not subject to judicial review. It concludes therefrom that the petitioner has failed to show that he has been deprived of any established right which will be enforced by a writ of mandamus.

It is evident that the controlling question here is whether the respondent hospital is a private or a public hospital. If it is the former the respondent will prevail; if it is the latter the writ will be awarded, at least to the extent of affording the petitioner a hearing on the refusal of his application. Thus, we must first determine the legal status of the respondent hospital.

All hospitals available for public use may be divided into two categories, public hospitals and private hospitals. A public hospital has been defined as one owned, maintained and operated by a governmental unit and supported by governmental funds. A private hospital is one that is owned,

operated and maintained by an individual or a corporation and in which no governmental agency has any voice in the management or control of the hospital property or in the formation of the rules for its government. *Shulman* v. *Washington Hospital Center*, 222 F. Supp. 59; *Hughes* v. *Good Samaritan Hospital*, 289 Ky. 123, 158 S. W. 2d 159.

The distinction between public and private institutions was succinctly stated in *Levin* v. *Sinai Hospital of Baltimore City*, 186 Md. 174, 46 A. 2d 298, as follows: "The essential difference between a public and a private corporation has long been recognized at common law. A public corporation is an instrumentality of the State, founded and owned by the State in the public interest, supported by public funds, and governed by managers deriving their authority from the State. Public institutions, such as State, county and city hospitals and asylums, are owned by the public and are devoted chiefly to public purposes. On the other hand, a corporation organized by permission of the Legislature, supported largely by voluntary contributions, and managed by officers and directors who are not representatives of the State or any political subdivision, is a private corporation, although engaged in charitable work or performing duties similar to those of public corporations. * * * So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own officers and directors. * * *"

The following statement found in 26 Am. Jur., Hospitals and Asylums, Section 3, is further determinative of the legal status of the respondent hospital: "When created by the voluntary agreement of private individuals and managed and governed by those selected by the members thereof, they are private corporations, even though they are dedicated by the terms of their charters to purposes of general and public charity, * * *."

In the instant proceeding the Ohio Valley General Hospital is owned, operated and maintained by the Ohio Valley General Hospital Association, a corporation created by the voluntary agreement of private individuals. The activities

and affairs of the association are managed and governed by those selected by the members thereof. It is not operated with public funds, nor is it governed by managers deriving their authority from the state or any other public entity.

While it appears clear from the discussion and definitions contained in the foregoing authorities that the hospital involved here is a private hospital, let us consider the reasons forwarded by the petitioner in support of his contention that such hospital does not come within that category. He urges that this hospital, being affected with a public interest, takes on the character of a public institution. This contention is without merit. All hospitals, whether public or private, are affected with a public interest. The Legislature, in the proper exercise of its police power, has expressed its interest in and concern with the welfare of hospital patients by requiring such institutions to be licensed by the state and by providing for regulations under which they must operate. Code, 1931, 16-5B, as amended. These requirements pertain to all hospitals, whether public or private, except those operated by the state or federal government.

The Legislature, under the police power of the state, has undertaken to license and regulate many types of business activities. The various public utility companies operate property which is devoted to public use. Being thus affected with a public interest, they are subject to regulation by the state. Code, 1931, Chapter 24, as amended. Restaurants and hotels must operate in conformance with regulations prescribed by the state. Code, 1931, 16-6, as amended. Barbers and beauticians are subject to regulations provided by statute. Code, 1931, 16-14, as amended. These and many other business activities are affected with a public interest and, in the promotion of the health, safety and general welfare of the public, are regulated in some degree by the state. Certainly, it can not be successfully contended that because an activity affected with a public interest is regulated by the state, it thereby becomes a public entity. We believe that this consideration does not detract from the respondent's status as a private hospital.

The petitioner next asserts that the Ohio Valley General Hospital is a public charitable hospital; that it is a recipient of the doctrine of charitable immunity; that it is exempt from the payment of real and personal property taxes; and that its operation is therefore subject to judicial control. We find this position untenable in the circumstances of this case. That this hospital receives charitable immunity is of no probative value in determining its status as a public or private hospital. Many charities of a private nature enjoy such immunity. They are not thereby converted into public institutions. Nor is the respondent's exemption from the payment of real or personal property taxes determinative of the question presented here. *Natale* v. *Sisters of Mercy of Council Bluffs*, 243 Iowa 582, 52 N. W. 2d 701. Under the provisions of Code, 1931, 11-3-9, as amended, any "property used for charitable purposes" shall be exempt from taxation. Nothing in that statute or in Article X, Section 1 of our State Constitution, which authorized its enactment, indicates that its provisions apply only to public entities. These facts do not indicate that the subject hospital is a public corporation.

It is undisputed in the record of this proceeding that the respondent, on several occasions, has received federal funds for the purpose of expanding its facilities. These funds were obtained under the provisions of the Hill-Burton Act. It is contended by the petitioner that the receipt of such public funds causes the hospital operated by the respondent to be a public hospital. It has been held almost universally that the receipt by a private hospital of donations or subventions from the government does not transform it into a public institution. *Shulman* v. *Washington Hospital Center*, 222 F. Supp. 59; *Van Campen* v. *Olean General Hospital*, 210 App. Div. 204, 205 N.Y.S. 554, affirmed 239 N. Y. 615, 147 N. E. 219; *Khoury* v. *Community Memorial Hospital, Inc.*, 203 Va. 236, 123 S. E. 2d 533.

The Court, in the *Khoury* case, *supra*, commenting on the significance of participating in Hill-Burton funds in determining the legal status of a hospital, made the following pertinent statement: "The hospital is not owned by the

federal or the state government, albeit federal and state funds may have made its construction possible. It is not an instrumentality of government for the administration of any public duty, although the service it performs is in the public interest. Its officers are not appointed by and are not representatives of government, notwithstanding that their authority stems from legislative enactments. Under these circumstances, the hospital falls squarely within the time-honored definition of a private corporation." We believe that this language is particularly applicable to the instant case.

Evincing further that the Federal Government does not have any influence whatsoever in the operation of any hospital brought into existence or aided through a Hill-Burton grant, the provisions of 42 U.S.C., Section 291m, read as follows: "Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter."

In *Stanturf* v. *Sipes*, 224 F. Supp. 883, the Court said: "It is the general rule of law, which I think will not be disputed, and does not require citation of authorities, that ordinarily the granting of funds, or, shall we say, the contribution of funds by either a state, county or municipality to a privately owned or operated charity or trust, does not make of it a public charity or trust, does not change the nature and character of its operation, nor does it give to any such contributing source, the right to manage or control the operation of its charity."

Under the Hill-Burton program, the state and federal agencies charged with the responsibility of its administration set certain standards which must be met as a condition to the receipt of funds. When these standards are complied with neither agency is further concerned with the operation of the hospital, other than to see that such standards are

continued. They have nothing whatever to do with the internal business and affairs of the hospital.

In support of his position the petitioner relies heavily on the decision in *Simkins, et al.* v. *Moses H. Cone Memorial Hospital,* 323 F. 2d 959. We have examined that decision and find that it was based upon an issue not present in the instant case. Therein it was found that the defendant hospitals, which participated in the Hill-Burton program, were sufficiently imbued with "state action" to bring them within the Fifth and Fourteenth Amendment prohibitions against racial discrimination. It was upon that ground that relief was granted in the *Simkins* case, not upon a determination that the defendant was a public rather than a private hospital. It is our view that the *Simkins* case is not controlling here.

Our principal concern here is to determine the legal status of the subject hospital—whether it is public or private. As noted herein, the respondent is a corporation created by the voluntary agreement of private individuals. The activities and affairs of the association are managed and governed by those selected by the members thereof. The hospital is supported primarily from the fees charged for the care and treatment of its patients. At no place in this record does it appear that any governmental agency participates in any degree in the operation or management of the internal affairs of the hospital. After due consideration of the issues raised by the petitioner, we find, and so hold, that in the circumstances of this case the respondent is a private corporation and that the hospital operated by it is a private hospital.

Having concluded that the Ohio Valley General Hospital is a private hospital, we reach the next question which must be answered in this proceeding, namely, whether a private hospital has authority to exclude, in its discretion, members of the medical profession from membership on its staff. This question was answered in the affirmative in a recent decision of this Court. *State ex rel. Bronaugh* v. *City of Parkersburg,* 148 W. Va. 568, 136 S. E. 2d 783. Therein the Court said: "The authorities are almost unanimous in hold-

ing that private hospitals, in the exercise of their discretion, have the right to exclude licensed physicians from the use of their facilities."

A similar expression is found in *Shulman* v. *Washington Hospital Center*, 222 F. Supp. 59, as follows: "The overwhelming weight of authority, almost approaching unanimity, is to the effect that such power and authority exist. The rule is well established that a private hospital has a right to exclude any physician from practicing therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, * * * or excluding any physician or surgeon from practicing in the hospital, is not subject to judicial review. The decision of the hospital authorities in such matters is final."

The following authorities, among others, hold to the same effect. *Levin* v. *Sinai Hospital of Baltimore City*, 186 Md. 174, 46 A. 2d 298; *Khoury* v. *Community Memorial Hospital, Inc.*, 203 Va. 236, 123 S. E. 2d 533; *Edson* v. *Griffin Hospital, et al.*, 21 Conn. Sup. 55, 144 A. 2d 341; *West Coast Hospital Ass'n.* v. *Hoare* (Fla.), 64 So. 2d 293; *Natale* v. *Sisters of Mercy of Council Bluffs*, 243 Iowa 582, 52 N. W. 2d 701; *Hughes* v. *Good Samaritan Hospital*, 289 Ky. 123, 158 S. W. 2d 159; *Van Campen* v. *Olean General Hospital*, 210 App. Div. 204, 205 N.Y.S. 554, affirmed 239 N. Y. 615, 147 N. E. 219; *Leider* v. *Beth Israel Hospital Ass'n.*, 11 N. Y. 2d 205, 227 N.Y.S. 2d 900, 182 N. E. 2d 393.

It is well settled by the great weight of authority and, in fact, is readily admitted by the petitioner, that a physician does not have a constitutional or any vested right to membership on a hospital staff. When the hospital involved is determined to be a public institution, a physician applicant to the medical staff is entitled to membership thereon or to a hearing of the reasons for the refusal of his application. If upon hearing it is found that the governing authorities have acted arbitrarily, capriciously or unreasonably, mandamus may lie. This right does not exist, however, in relation to a private hospital, which may, in its discretion, exclude any physician from its staff without being required to give any reason therefor.

The right to relief by mandamus must be clearly established. "To warrant the court in granting this writ such a state of facts must be presented as to show that the petitioner has a clear right to the performance of the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing." 12 M.J., Mandamus, Section 5. See also *State ex rel. Zagula, et al. v. Grossi, Clerk, et al.*, 149 W. Va. 11, 138 S. E. 2d 356; *State ex rel. Bronaugh v. The City of Parkersburg*, 148 W. Va. 568, 136 S. E. 2d 783; *State ex rel. Cutlip v. Sawyers*, 147 W. Va. 687, 130 S. E. 2d 345; *State ex rel. Evans v. Kennedy*, 145 W. Va. 208, 115 S. E. 2d 73; *Brumfield v. Board of Education of Logan County*, 121 W. Va. 725, 6 S. E. 2d 238; and *Koebert v. City of Clarksburg*, 114 W. Va. 406, 171 S. E. 892.

In view of our finding that the Ohio Valley General Hospital is a private hospital, we hold, in accordance with the rule enunciated above, that the petitioner has failed to establish a clear legal right to the relief requested or to show that a corresponding duty rests upon the respondent to comply with his demand.

The writ will be denied and the rule heretofore issued will be discharged.

*Writel denied.*