IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

FILED

**November 13, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0834

CAMDEN-CLARK MEMORIAL
HOSPITAL CORPORATION,
Third-Party Defendant Below, Petitioner

v.

TUAN NGUYEN, M.D.,
Defendant and Third-Party Plaintiff Below,
Respondent

Appeal from the Circuit Court of Wood County
The Honorable Jeffrey B. Reed, Judge
Case No. 14-C-2787

AFFIRMED

Submitted:  October 11, 2017
Filed:  November 13, 2017

Thomas J. Hurney, Esq.
Laurie K. Miller, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
and
David R. Stone, Esq.
Jackson Kelly, PLLC
Morgantown, West Virginia
Attorneys for Petitioner

Thomas E. Scarr, Esq.
Steven L. Snyder, Esq.
Sarah A. Walling, Esq.
Jenkins Fenstermaker PLLC
Huntington, West Virginia
Attorneys for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

JUSTICE WALKER, deeming herself disqualified, did not participate in the decision of this case.

JUDGE HUTCHISON sitting by temporary assignment.

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

## SYLLABUS BY THE COURT

1.      "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 80 (1957)." Syl. Pt. 3, *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977).

2.      Although courts have limited jurisdiction to review purely administrative decisions of private hospitals, the courts of this state do have jurisdiction to hear cases alleging torts, breach of contract, violation of hospital bylaws or other actions that contravene public policy.

WORKMAN, Justice:

Respondent Dr. Tuan Nguyen ("Physician") filed a third-party complaint against Petitioner Camden-Clark Memorial Hospital Corporation (the "Hospital") and alleged it discriminated and retaliated against him for reporting patient safety concerns; he alleged violations of the West Virginia Patient Safety Act (the "Act"),[1] retaliatory discharge, and intentional infliction of emotional distress. The Hospital filed a motion to dismiss Physician's claims under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. The Hospital contended that because Physician's claims are linked to its decision to not reappoint him to its medical staff, it enjoyed qualified immunity as afforded by this Court in *Mahmoodian v. United Hospital Center, Inc.*, 185 W.Va. 59, 404 S.E.2d 750 (1991). The circuit court denied the Hospital's motion, and it appealed.

This Court finds that Physician's claims are distinguishable from *Mahmoodian*, and sufficient to survive the Hospital's Rule 12(b)(6) motion. We therefore affirm the order of the circuit court.

## I.    FACTS AND PROCEDURAL HISTORY

In 2008, Physician completed his residency and earned his license to practice medicine in West Virginia. Physician was employed by Camden-Clark Physician Corporation (the "Corporation") as a general surgeon from 2008 until he was terminated in 2013. The Corporation operates a physicians' group wholly owned by Camden-Clark

---

[1] *See* W.Va. Code §§ 16-39-1 to -7 (2016).

1

Health Services, Inc. ("CCHS"). Physician practiced medicine at the Hospital, which does business as Camden Clark Medical Center in Parkersburg, West Virginia. These corporate entities are closely related and governed by the same individuals.[2]

For much of his employment, Physician was the only general surgeon at the Hospital. He maintained a demanding schedule with his own patients, and was also on call for other physicians, including a vascular surgeon. Physician alleges that this arrangement troubled him because he did not have deep-rooted expertise in vascular surgery and that he repeatedly expressed patient safety concerns about this situation to administrators. Physician also alleges that in addition to raising his own concerns, he supported Dr. Roman Petrov, a thoracic surgeon, who clashed with administrators over patient safety concerns including allegations of inadequate staffing, contaminated instruments, and insufficient equipment and supplies.

Pursuant to his employment agreement with the Corporation, Physician had to maintain appointment to the medical staff of the Hospital.[3] It is undisputed that one of

---

[2] David McClure is the President of both the Hospital and CCHS; Kathy Eddy is the President of the Corporation, and the Secretary/Director of both the Hospital and CCHS; Todd A. Kruger is Vice-President for both the Hospital and CCHS, and General Counsel for the Corporation. Michael King was President and CEO of CCHS in 2013, when he directed Rick Hamilton, Executive Director of the Corporation, to terminate Physician's employment with the Corporation.

[3] Under the terms of his employment agreement, Physician was required to "meet and continue to meet the Eligibility Criteria and other requirements for active medical staff appointment and re-appointment set forth in the Medical Staff Bylaws, Credentials (continued . . .)

2

the eligibility criteria for Physician's appointment to the medical staff was that he become board certified in his primary area of practice within five years from the date of completion of his residency.[4] Thus, Physician faced a June 30, 2013, deadline to become board certified, although the Hospital's Credentials Policy also provided a procedure whereby the Hospital could waive this requirement.

Board certification is a two-part process; Physician passed the Qualifying Examination (the written portion) but had not yet taken the Certifying Examination (the oral portion) when he and the Corporation were negotiating his most recent employment agreement in 2013. Administrators with the Corporation told Physician that another general surgeon would be added to the Hospital's staff. With this understanding,

---

Policy and/or other policies, procedures and rules and regulations of the Hospital and its medical staff from time to time."

[4] The Hospital's medical staff bylaws govern the eligibility criteria for appointment. The bylaws require that physicians be

> board certified in their primary area of practice at the Hospital. Those applicants who are not board certified at the time of application but who have completed their residency or fellowship training within the last five years will be eligible for Medical Staff appointment. However, in order to remain eligible, those applicants must achieve board certification in their primary area of practice within five (5) years from the date of completion of their residency or fellowship training. (This requirement is applicable only to those individuals for initial staff appointment after the date of adoption of this Policy. All individuals appointed previously will be governed by the board certification requirements in effect at the time of their appointments[.]).

3

Physician planned to take some time off to complete his board certification. Under the new agreement, effective July 1, 2013, Physician received a pay raise, and was permitted to practice on the weekends at Marietta Memorial Hospital in Ohio. The new employment agreement became effective one day *after* the fifth anniversary deadline for Physician to become board certified.

In spite of his new employment agreement with the Corporation, the Hospital declined to review Physician's application for reappointment to its medical staff in the fall of 2013, purportedly because he failed to obtain board certification. On October 22, 2013, Physician sent a letter to the Hospital's Medical Executive Committee requesting "temporary privilege" at the Hospital. Physician indicated that he was scheduled to take the certification exam in March of 2014.

Then, just months after it renewed his employment agreement, the Corporation terminated Physician in November 2013, purportedly for his failure to maintain membership on the medical staff of the Hospital. Physician alleges that when the Corporation's administrator terminated him, he told Physician that the Corporation would not seek to enforce the non-competition portion of their employment agreement or seek reimbursement for his "tail coverage," a policy of medical professional liability insurance.

4

Following his termination, Physician began working with a physicians' group at Marietta Memorial Hospital. In March of 2014, the American Board of Surgery certified Physician in surgery; this board certification was less than 180 days after the Corporation gave notice of its intent to terminate his employment contract.

The Corporation initiated the instant action in October 2014 when it filed a claim against Physician the year after his termination. The Corporation alleged Physician breached the employment agreement when he failed to purchase a tail policy of medical professional liability insurance. The Corporation sought $67,022 in damages, the cost it incurred by purchasing this policy.

Physician answered the Corporation's complaint and asserted that it was estopped from pursuing its breach of contract claim because administrators told him the Corporation would not seek any payments from Physician, including the payment of the tail coverage. Physician stated that by entering into the 2013 employment agreement with full awareness of his board certification status, the Corporation waived any requirement that he achieve board certification within five years of his initial hire date. Physician also filed five counterclaims including breach of contract, breach of the covenant of good faith, violations of the Act, and retaliatory discharge, as well as a claim for intentional infliction of emotional distress. Physician alleged that the Corporation's stated reason for his termination was a pretext for retaliation; soon after entering into this employment agreement, he "incurred the wrath" of the Corporation and the Hospital administrators

5

"due to his expressions of concern regarding patient safety and his friendship with and support of Dr. Roman Petrov."[5]

Physician amended his counterclaim against the Corporation to include a third-party complaint against the Hospital, and its parent corporation CCHS, which is the subject of this appeal.[6] He filed claims against the Hospital for violations of the Act, retaliatory discharge, and intentional infliction of emotional distress. In his pleadings, Physician referred to the Corporation, the Hospital, and CCHS collectively as "Camden-Clark" "[b]ecause of their shared administration, facilities, support staff and inextricably intertwined operations[.]"

Physician alleged that he did not avail himself of appropriate administrative remedies because the Camden-Clark entities represented that he would not be required to pay for tail coverage and would be relieved of any obligation under a noncompetition clause. He also alleged the Corporation, the Hospital and/or CCHS breached the

---

[5] Dr. Petrov also lost staffing privileges at the Hospital in the fall of 2013, and that matter is in litigation. In his brief before this Court, Physician references a deposition taken in Dr. Petrov's lawsuit. Specifically, he refers to the testimony of Rick Hamilton, former Executive Director of the Corporation, wherein Mr. Hamilton discussed the circumstances surrounding the decision to terminate Physician from the Corporation and deny his staffing privileges at the Hospital. In its reply brief, the Hospital did not object to these references. Nevertheless, this Court does not rely on this information to reach our resolution of this appeal because our review is limited to the sufficiency of Physician's third-party complaint.

[6] CCHS is not a party to this appeal.

6

employment agreement when it deprived him of the peer review process described in the employment agreement.

In May of 2016, Physician filed a motion to compel discovery after the Corporation, the Hospital, and CCHS refused to permit *any* depositions of their employees on the basis of qualified privilege.

In response, the Hospital filed a Rule 12(b)(6) motion to dismiss Physician's claims and/or for summary judgment. The Hospital argued that because Physician's claims touch on the issue of its criteria for eligibility for appointment to its medical staff, it must be afforded qualified immunity pursuant to *Mahmoodian*.[7] As such, the Hospital maintained that the circuit court should only review: 1) whether the Hospital's medical staff bylaws and credentials policy provided for a fair procedure; and 2) whether that procedure was followed. The Hospital claimed it never reviewed Physician's application because it was undisputed that he failed to meet the threshold eligibility criteria.

In June of 2016, the circuit court held a hearing on the parties' motions. It denied the Hospital's motion to dismiss and found that Physician's claims were not prohibited by *Mahmoodian*. The court further held that Physician had "the right to

_____

[7] *See* infra section III B of this opinion for a discussion of syllabus point one of *Mahmoodian*, 185 W.Va. at 60, 404 S.E.2d at 751.

propound discovery, to obtain full responses to his discovery requests, and to depose witnesses who may have relevant knowledge, subject to limitations set out by law." Moreover, it held that "[r]egarding the issue of interrelatedness of the Camden-Clark parties, this Court has already ruled that the doctor is to be given an opportunity to explore the possibility that those are not separate entities, but are all interrelated." The circuit court deferred ruling on the Hospital's motion for summary judgment.[8]

## II.    STANDARD OF REVIEW

It is important to emphasize that this is *not* an administrative appeal following an evidentiary hearing where a physician is claiming that violations of fair procedure or lack of substantial evidence requires a court to set aside the hospital's decision to deny reappointment of staffing privileges. If it were such a case, our standard

---

[8] Consequently, the circuit court did not reach the Hospital's argument that Physician released it from all liability for actions involving credentialing decisions when he signed a release of information form and consented to the Hospital's bylaws. The Hospital acknowledged below that the circuit court had to look beyond the pleadings to rule on this issue.

Before this Court, the Hospital raised this issue of waiver as its second assignment of error, although it devotes only a page and a half to this argument. We decline to address it as our review at this stage of the proceeding is limited to Physician's third-party complaint. "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, and an inquiry as to the legal sufficiency is essentially limited to the content of the complaint." *State v. Bayer Corp.*, 32 So.3d 496, 502 (Miss. 2010) (quotation and citation omitted).

of review would be highly favorable to the Hospital.[9] But Physician, a doctor who performed surgeries at the hospital for five years and was never the subject of disciplinary action, did not receive a hearing before the Hospital denied his application for reappointment to its medical staff.

This appeal arrives here by way of an order denying the Hospital's Rule 12(b)(6) motion to dismiss Physician's lawsuit. In reviewing such motions, our inquiry is limited to whether Physician has put forth claims that, if proven, are factually and legally sufficient to sustain a favorable judgment.[10] As no real discovery has taken place, we look to Physician's pleadings and resolve conflicts and inferences in the record in favor of him.

We examine de novo the denial of a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. *Citibank, N.A. v. Perry*, 238 W.Va. 662, 664, 797 S.E.2d 803, 805 (2016).

---

[9] *See Mahmoodian*, 185 W.Va. at 65, 404 S.E.2d at 756 (discussing limited scope of judicial review when medical staff challenges private hospital's disciplinary proceeding).

[10] Our review of the case is limited to the sufficiency of the complaint; thus, we must accept as true all well-pled facts and must draw all reasonable inferences in favor of Physician. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 776 n.7, 461 S.E.2d 516, 522 n.7 (1995).

In order to defeat a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient to state a claim. This Court has previously stated that "[t]he purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint. A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Cantley v. Lincoln Cty. Comm'n,* 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007). "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle,* 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008). Thus, in syllabus point three of *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), this Court held that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 80 (1957)."

## III.    DISCUSSION

The Hospital contends that the circuit court erred in denying its motion to dismiss, or in the alternative, in not granting it summary judgment, because under *Mahmoodian*, it is immune from review of its medical staff appointment decisions beyond a review of whether the Hospital was in compliance with its bylaws. Physician counters that the limited immunity afforded by *Mahmoodian* does not extend to shield the

10

Hospital from illegal actions, such as retaliatory discharge in violation of the Act. In order to put these arguments in context, we begin by summarizing Physician's claims.

## A. Physician's Claims

Physician alleges three causes of action against the Hospital. He first alleges that the Hospital violated the Act. *See* W.Va. Code §§ 16-39-1 to -7. The Legislative purpose of the Act is to "protect patients by providing protections for those health care workers with whom the patient has the most direct contact." W.Va. Code § 16-39-2(b).[11]  The Act provides that:

---

[11] West Virginia Code § 16-39-2 reads in its entirety as follows:

> (a) The Legislature finds that:
> (1) Patients receiving medical care in this state need stable and consistent care from those providing health care services at every level;
> (2) Dedicated health care workers are instrumental in providing quality patient care services and ensuring that the patient's best interests are at all times protected;
> (3) During the course of caring for their patients, many health care workers often observe instances of waste or wrongdoing that detrimentally affect both the patients and the health care facility;
> (4) Health care workers who observe such matters are often reluctant to report the waste or wrongdoing to the administrator of the health care facility or other appropriate authority for fear of retaliatory or discriminatory treatment through termination, demotion, reduction of time, wages or benefits or other such actions; and
> (5) The quality of available health care will suffer in this state if dedicated health care workers are discouraged

(continued . . .)

11

(a) No person may retaliate or discriminate in any manner against any health care worker because the worker, or any person acting on behalf of the worker:

(1) Makes a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste[;]

(2) Advocated on behalf of a patient or patients with respect to the care, services or conditions of a health care entity;

(3) Initiated, cooperated or otherwise participated in any investigation or proceeding of any governmental entity relating to the care, services or conditions of a health care entity.

*Id.* § 16-39-4.

Physician alleges that the Hospital violated the Act when it discriminated and retaliated against him in response to his good faith reports "on behalf of patients with respect to the care, services and conditions of Camden-Clark's health care facilities." There is no dispute that the Hospital is a health care entity[12] and Physician is a health care

---

from reporting instances of waste or wrongdoing that affect the quality of health care delivery in this state.
(b) Consequently, the Legislature intends by enacting this article to protect patients by providing protections for those health care workers with whom the patient has the most direct contact.

[12] *See* W.Va. Code § 16-39-3 (6) ("'Health care entity' includes a health care facility, such as a *hospital*, clinic, nursing facility or other provider of health care services.") (emphasis added).

worker[13] within the meaning of the Act. The Act provides that "[a]ny health care worker who believes that he or she has been retaliated or discriminated against" may file a civil action. *Id*. § 16-39-6(a). And a court, in rendering a judgment for a plaintiff in an action brought under the Act, can award a variety of remedies including reinstatement, actual damages, as well as reasonable attorneys' fees and costs. *Id*. § 16-39-6(b).

As his second cause of action, Physician alleged retaliatory discharge. In support of this count, Physician alleged that the Corporation, the Hospital, and CCHS acted in full collaboration and terminated his employment in retaliation for his complaints about patient safety and support of Dr. Petrov's complaints of patient safety.[14] To identify a substantial public policy, we look "to established precepts in [the State's] constitution,

---

[13] *See Id*. § 16-39-3 (7) ("'Health care worker' means a person who provides direct patient care to patients of a health care entity and who is an employee of the health care entity, a subcontractor or independent contractor for the health care entity, or an employee of such subcontractor or independent contractor. The term includes, but is not limited to, a nurse, nurse's aide, laboratory technician, *physician,* intern, resident, physician assistant, physical therapist or other such person who provides direct patient care.") (emphasis added).

[14] This Court held in the syllabus of *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

*Accord* Syl. Pt. 2, *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 285 S.E.2d 679 (1981).

13

legislative enactments, legislatively approved regulations, and judicial opinions."

*Birthisel v. Tri-Cities Health Servs. Corp.,* 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (1992). Physician relied on the substantial public policy articulated in the Act. *See* W.Va. Code § 16-39-2.

In his third cause of action, Physician alleged intentional infliction of emotional distress.[15] Included within the averments supporting this count were that the conduct of the Corporation, the Hospital, and CCHS towards Physician "was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."

---

[15] When analyzing an intentional infliction of emotional distress claim, also referred to as a tort of outrage claim, in the employment context, this Court has stated that

> [t]he prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

Syl. Pt. 2, *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994) *holding modified by Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997).

Moreover, he alleged that the corporate entities "acted with the intent to inflict emotional distress upon" him "or acted recklessly when it was certain or substantially certain emotional distress would result from their conduct."

With this backdrop, we turn to the Hospital's assignment of error.

### B. Hospital's Rule 12(b)(6) Motion

The Hospital asserts that it enjoys qualified immunity from *all* of Physician's claims. It submits that our review here is razor-thin, one that begins—and ends—with our 1991 decision in *Mahmoodian*. We disagree.

In *Mahmoodian*, a private hospital revoked an obstetrician's staffing privileges for his pattern of disruptive and unprofessional behavior following an evidentiary hearing with full appellate review by the hospital's board of directors. 185 W.Va. at 62, 404 S.E.2d at 753. He brought a civil action against the hospital and the court granted a permanent injunction that required the hospital to reinstate his staff privileges. The private hospital appealed and this Court reversed. In this context, we held that a court may review only whether a hospital's medical staff bylaws presented clearly articulated requirements for medical staff appointment, and whether the hospital's refusal to appoint was consistent with those bylaws. *See* Syl. Pt. 1, *Mahmoodian*, 185 W.Va. at 60, 404 S.E.2d at 751 ("The decision of a private hospital to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges of a medical staff member

15

is subject to limited judicial review to ensure that there was substantial compliance with the hospital's medical staff bylaws governing such a decision, as well as to ensure that the medical staff bylaws afford basic notice and fair hearing procedures, including an impartial tribunal.").

This Court articulated sound public policy reasons behind our decision in *Mahmoodian* wherein we conferred limited judicial review when an individual brings suit challenging a private hospital's medical staffing decisions.[16] We recognized that courts

---

[16] We summarized those reasons as follows:

> The judicial reluctance to review the medical staffing decisions of private hospitals, by way of injunction, declaratory judgment or otherwise, reflects the general unwillingness of courts to substitute their judgment on the merits for the professional judgment of medical and hospital officials with superior qualifications to make such decisions. Furthermore, a private hospital's actions do not constitute state action and, therefore, are not subject to scrutiny for compliance with procedural "due process," which is constitutionally required when there is state action. However, there are basic, common-law procedural protections which must be accorded a medical staff member by a private hospital in a disciplinary proceeding which could seriously affect his or her ability to practice medicine. Such basic procedural protections include notice of the charges and a fair hearing before an impartial tribunal. If a private hospital's medical staff bylaws provide these basic procedural protections, and if the bylaws' procedures are followed substantially in the particular disciplinary proceeding, a court usually will not interfere with the medical peers' recommendation and the hospital's exercise of discretion on the merits.

(continued . . .)

must be reluctant to interfere in decisions that are grounded in hospitals' areas of expertise. Those compelling interests are largely marginalized, however, when a health care worker alleges retaliatory or discriminatory conduct prohibited by statute under a legislative policy that seeks to safeguard the health and safety of hospital patients. *See* W.Va. Code § 16-39-2.

In this case, the Hospital mischaracterizes the nature of Physician's claims and asks us to ignore the allegations of retaliation for patient safety complaints. To accept the Hospital's argument, this Court would have to disregard the gravamen of Physician's claims and don blinders to focus only on the Hospital's decision to deny Physician's reappointment application due to his credentials. However, Physician did not file suit challenging the Hospital's medical staff reappointment standards. In fact, he has *never* argued that the Hospital could not require that its surgeons be board certified. Rather, Physician contends that the Hospital cannot ignore its credentialing requirements when it suits its purposes, and then reverse course and revoke his staffing privileges in retaliation for his patient safety complaints. Therefore, at this stage of the proceeding, *Mahmoodian* is readily distinguishable from the instant matter.

*Mahmoodian*, 185 W.Va. at 65, 404 S.E.2d at 756.

Likewise, in *Khan v. Suburban Community Hospital*, 340 N.E.2d 398 (Ohio 1976), the court stated that when the board of trustees of a private, nonprofit hospital adopts reasonable criteria for the privilege of practicing major surgery in the hospital, a court should not substitute its evaluation of such matters. The court stated sharply that "judges should not be flaunting the staff of Mercury and telling physicians how to run their profession." *Id*. at 402.

17

We therefore reject the Hospital's proposition that any tangential involvement of a hospital's staffing decision somehow forecloses judicial intervention in the types of disputes normally dealt with in the courts. Although courts have limited jurisdiction "to review purely administrative decisions of private hospitals, the courts of this state do have jurisdiction to hear cases alleging torts, breach of contract, violation of hospital bylaws or other actions that contravene public policy." *Clark v. Columbia/HCA Info. Servs., Inc.*, 25 P.3d 215, 220 (Nev. 2001).

A recent decision of the Supreme Court of California illustrates this principle. In *Fahlen v. Sutter Central Valley Hospitals*, 318 P.3d 833 (Cal. 2014), a physician brought a statutory health care facility whistleblower claim against a hospital after it terminated his staff privileges; he alleged the hospital's action constituted retaliation for his reports of substandard performance by hospital nurses. The court permitted the suit to proceed and held

> that when a physician claims, under [the statute][17], that a
> hospital's quasi-judicial decision to restrict or terminate his or

---

[17] The health care facility whistleblower statute in effect at the time *Fahlen* was decided declared

> "the public policy of the State of California to encourage
> patients, nurses, *members of the medical staff,* and other
> health care workers to notify government entities of suspected
> unsafe patient care and conditions." . . . To this end, the
> statute provides that "[n]o health care facility shall
> discriminate or retaliate, *in any manner,* against any patient,
> employee, *member of the medical staff,* or any other health
> care worker . . . because that person has . . . [p]resented a

(continued . . .)

18

her staff privileges was itself a means of retaliating against the physician "because" he or she reported concerns about the treatment of patients, the physician need not first seek and obtain a mandamus judgment setting aside the hospital's decision before pursuing a statutory claim for relief. [The statute] declares a policy of encouraging workers in a health care facility, including members of a hospital's medical staff, to report unsafe patient care. The statute implements this policy by forbidding a health care facility to retaliate or discriminate "in any manner" against such a worker "because" he or she engaged in such whistleblower action. . . . It entitles the worker to prove a statutory violation, and to obtain appropriate relief, in a civil suit before a judicial fact finder.

*Id*. at 835 (citations omitted and footnote added).

In the same fashion, our Act endeavors to safeguard the health and safety of patients. It provides, without qualification, that a health care worker who has suffered retaliation or discrimination "in any manner" for making good faith reports about patient safety issues is entitled to institute a civil action for relief. W.Va. Code § 16-39-4. Therefore, the West Virginia Legislature has made clear that courts should not ignore allegations that a hospital's actions contravene this significant public policy simply because credentialing standards or staffing privileges are implicated. There is therefore no basis to conclude that the Act precludes a hospital physician from bringing a civil suit

---

grievance, complaint, or report *to the facility,* to an entity or agency responsible for accrediting or evaluating the facility, *or the medical staff of the facility,* or to any other governmental entity."

*Fahlen*, 318 P.3d at 839 (citing Cal. Health & Safety Code § 1278.5 (2008)).

claiming that the hospital's decision regarding his or her medical staff appointment was in retaliation for good faith reports of patient safety complaints.

The broad discretion afforded hospitals in their medical staff selection process under *Mahmoodian* must be tempered with the protections afforded health care workers in our Act, in a manner that serves the common aim of both schemes—the safe and competent care of hospital patients. Thus, it is not necessary to reject the rationale of *Mahmoodian* to affirm the circuit court's decision.

Therefore, Physician's statutory cause of action under the Act and his other claims may proceed as they stand in stark contrast to the plaintiff's complaints about a hospital's disciplinary proceeding in *Mahmoodian*.[18] The Hospital's wholesale reliance on *Mahmoodian* is therefore not enough for this Court to dismiss Physician's claims at this stage of the litigation.

---

[18] *State ex rel. Sams v. Ohio Valley General Hospital Association*, 149 W.Va. 229, 140 S.E.2d 457 (1965), is also patently dissimilar. In *Sams*, a physician filed suit after he was unsuccessful in his initial attempt to gain staffing privileges at a private hospital; he sought an order compelling the hospital to grant him privileges. This Court refused to become entangled in the controversy, and held in syllabus point four that: "The governing authorities of a private hospital, in the exercise of their discretion, have the absolute right to exclude licensed physicians from its medical staff and such action is not subject to judicial review." *Id*. at 229, 140 S.E.2d at 458. The physician in *Sams* had not worked at the hospital, so he obviously had not alleged that he was retaliated against for making patient safety complaints.

20

Accordingly, we find Physician sufficiently pled his causes of action to survive a motion to dismiss made under Rule 12(b)(6). This Court has previously stated that motions to dismiss are generally viewed with disfavor because the complaint is to be construed in the light most favorable to the plaintiff and its allegations are to be taken as true. *Sticklen v. Kittle,* 168 W.Va. 147, 163-64, 287 S.E.2d 148, 157 (1981). Obviously, Physician must still develop sufficient facts in order to ultimately prevail on his claims, but it does not appear beyond doubt to the Court at this stage of the proceeding that he can prove no set of facts in support of his claims which would entitle him to relief. Syl. Pt. 3, *Chapman,* 160 W.Va. at 530, 236 S.E.2d at 207.

## IV.  CONCLUSION

We affirm the August 4, 2016, order of the Circuit Court of Wood County.

Affirmed.

21