No. 21-0843 – *A. Karim Katrib, M.D. v. Herbert J. Thomas Memorial Hospital Association and Thomas Health System, Inc.*

**FILED**

**March 27, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's determination that Dr. A. Karim Katrib's ("Dr. Katrib") claims for retaliation, discrimination, tortious interference, intentional infliction of emotional distress, and pre-petition failure to provide a hearing were *dischargeable* in Herbert J. Thomas Memorial Hospital's ("the hospital") bankruptcy, as this issue is governed by federal law and the equities of this case simply do not come into play.[1] However, I dissent from the majority's conclusion that any of the claims were actually *discharged* in the bankruptcy under the facts and circumstances of this case, and further dissent on separate grounds from the majority's conclusion that Dr. Katrib's claim involving the hospital's post-petition failure to provide him with a hearing was discharged in the bankruptcy.

As to the first issue, there can be no question that the first four causes of action referenced above, as well as the hospital's failure to provide a hearing prior to January 10, 2020, were based on the hospital's allegedly tortious conduct prior to the date on which it filed its bankruptcy petition and were therefore dischargeable in the bankruptcy

---

[1] *See* text *infra*.

1

proceeding. *See* 11 U.S.C. § 101(5)(A) & (B);[2] *see also Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990) (explaining that "Congress chose expansive language" in order to effectuate its "broad rather than restrictive view of the class of obligations that qualify as a 'claim' giving rise to a 'debt.'"); *In re Motors Liquidation Co.*, 576 B.R. 761, 771 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) ("Congress selected the broadest possible definition to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'") (citation omitted)). Indeed, "even unknown claims may be discharged so long as there is a sufficient relationship between the debtor and the claimant such that the potential future claims might be contemplated and addressed in the bankruptcy proceeding." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 152 (E.D.N.Y. 2012) (citations omitted).

---

[2] Title 11, §§ 101(5)(A) & (B) of the United States Code provide that

5. The term "claim" means -

**(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

There is no question that the provisions of 11 U.S.C. §§ 101(5)(A) & (B) have as a primary, and salutary, purpose, "to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Perez v. Campbell*, 402 U.S. 637, 648 (1971) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). However, that salutary purpose comes at a cost: the "expansive language"[3] utilized to sweep virtually all claims, including potential claims, into the bankruptcy proceedings can pose a trap for the unwary. This case perfectly illustrates the point: Dr. Katrib, who had constructive notice of the hospital's bankruptcy filing,[4] continued to negotiate his dispute with the hospital rather than file a proof of claim, apparently unaware that the factual underpinning of his claims having occurred prior to the date on which the bankruptcy petition was filed, the claims had to be litigated, if at all, in the bankruptcy proceeding.

Thus, I concur with the majority that absent a viable due process challenge, confirmation of the hospital's bankruptcy plan would operate to discharge Dr. Katrib's claims, including his claim that the hospital had failed to provide him with a hearing on the merits of the suspension/revocation of his hospital privileges prior to institution of the bankruptcy proceeding.[5] Where I part company with the majority, however, is that in my

---

[3] *Davenport*, 495 U.S. at 558.

[4] Dr. Katrib does not contend otherwise.

[5] I disagree with the majority's characterization of this claim as a "*Mahmoodian* [*Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W. Va. 59, 404 S.E.2d 750 (1991)] claim,"

3

view, Dr. Katrib *has* a viable due process challenge to the discharge: the facts and circumstances alleged in his complaint, construed in a light most favorable to him, are sufficient to support a finding that he was a "known creditor" who was entitled to – but did not receive – actual written notice of the bar date for submission of a proof of claim in the bankruptcy proceeding. In this regard, it is hornbook law that "[a] court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, *and inferences arising from those facts*, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Virginia*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (emphasis added and citation omitted). Although the

---

because it is undisputed that Dr. Katrib has never been afforded a hearing on the merits of his suspension and threatened revocation of his hospital privileges. A *Mahmoodian* claim is an administrative appeal from a decision reached in an evidentiary hearing: "The decision of a private hospital revoking or otherwise affecting adversely the staff appointment or clinical privileges of a medical staff member will be sustained when, *as an element of fair hearing procedures*, there is substantial evidence supporting that decision." *Id.* at 60, 404 S.E.2d at 751, Syl. Pt. 4 (emphasis added).

In *Camden-Clark Memorial Hospital Corp. v. Nguyen*, 240 W. Va. 76, 807 S.E.2d 747 (2017), we distinguished *Mahmoodian* on that specific ground:

> [T]his is *not* an administrative appeal following an evidentiary hearing where a physician is claiming that violations of fair procedure or lack of substantial evidence requires a court to set aside the hospital's decision to deny reappointment. . . . [because] Physician, a doctor who performed surgeries at the hospital for five years and was never the subject of disciplinary action, did not receive a hearing[.]

*Id.* at 80, 807 S.E.2d at 751.

majority gives lip service to this unassailable proposition, it then proceeds to give the factual allegations of the complaint short shrift and ignores any inferences favorable to Dr. Katrib.

In a bankruptcy proceeding, a known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Pro. Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988).[6] On the flip side of the coin, an unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor in bankruptcy]." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 317 (1950). Under the facts and circumstances of this case, the only possible inference to be drawn is that the authorities in charge of administration of the hospital, a small-market medical facility, were well aware of the ongoing dispute arising from the hospital's attempt to suspend, and ultimately revoke, the privileges of a sixty-seven-year-old physician who had held such privileges for decades. Dr. Katrib had retained counsel, and lawyers on both sides of the dispute had been in communication for more than six months while the matter was investigated. Dr. Katrib had secured the services of an expert and submitted the expert's opinion to the hospital to rebut the claim that his treatment and care of a particular patient was below the standard of care. The hospital had sent Dr. Katrib a letter informing him of

---

[6] In this regard, "[a] debtor does not have a 'duty to search out each conceivable or possible creditor and urge that a person or entity to make a claim against it.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (citing *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991)).

its intention to seek not only suspension but also permanent revocation of his privileges, and Dr. Katrib had filed a formal request for a hearing, which was his right under the hospital's Medical Bylaws. Although no hearing had been scheduled, the circuit court found as a fact that "[b]oth parties agreed . . . that Dr. Katrib, through two prior law firms, and Thomas Hospital's counsel had been in negotiations over the termination of Dr. Katrib's clinical privileges prior to *and during the pendency of* the Bankruptcy Case." (Emphasis added).

Ignoring all of these facts, the majority finds that the issue of whether Dr. Katrib was a known creditor "turns on whether . . . Dr. Katrib's violation-of-medical-staff-bylaws claim [was] 'reasonably ascertainable' from a search of its records." The majority adopts this test from *In re Nortel Networks, Inc.*, 531 B.R. 53 (Bankr. D. Del. 2015), where the court stated that "[r]easonable diligence [in ascertaining the identity of a creditor] does not require impracticable and extended searches. . . . The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Id*. at 63 (citation omitted). The majority's reliance on *Nortel* is misplaced. First, I find nothing in the appendix record to evidence the hospital's "careful examination" of its books and records to determine the identities of creditors, let alone that such "careful examination" failed to yield any information about the dispute with Dr. Katrib. Second, the relevant entity in *Nortel* was the "ultimate

corporate parent of Nortel entities spread across the globe,"[7] which could hardly be expected to be aware of some wrongful termination actions threatened by employees of Nortel's Canadian affiliate. Here, in contrast, the relevant entity is a hospital located in Charleston, West Virginia, which would surely be aware of a protracted ongoing dispute involving alleged malpractice and the resultant suspension of a physician's privileges, without having to search its books and records. Third, even assuming arguendo that such a search of the hospital's books and records was undertaken, the search would necessarily have revealed communications between the hospital and Dr. Katrib – and their respective counsel – concerning that alleged malpractice and suspension.

The majority also adopts the hospital's argument that even though it knew of the administrative proceedings involving the suspension and threatened revocation of Dr. Katrib's privileges, it did not know that the matter would result in a civil action alleging tort claims and seeking monetary damages. This assertion cannot pass the "straight face" test; is it even remotely believable that where Dr. Katrib had been fighting the suspension of his privileges for more than six months, had hired counsel, had secured the services of an expert, and had requested a hearing but never been given one, it didn't occur to the hospital that he would take the fight to court?

---

[7] *In re Nortel Networks, Inc.*, 531 B.R. at 59 n.6.

Based on the allegations of the complaint and the facts as agreed to by the parties, I believe that resolution of this case should fall within the paradigm established in the case of *In re Talon Auto. Grp., Inc.*, 284 B.R. 622 (Bankr. E.D. Mich. 2002), where the facts are materially similar to those before us. In late 2000, Sheryl Vargo filed a grievance with her union steward challenging her suspension from employment stemming from an altercation with a coworker, as well as Talon Automotive's failure to address Ms. Vargo's claims of sexual harassment. *Id*. at 623. The grievance was still pending when the company filed for bankruptcy protection on June 29, 2001. *Id*. at 623-24. The company did not list Ms. Vargo as a creditor because "it did not believe she had a claim." *Id*. at 624. On October 12, 2001, the company fired Ms. Vargo, and two months later she filed a lawsuit in state court alleging wrongful termination, intentional infliction of emotional distress, sexual harassment, and retaliation. *Id*. Talon moved to dismiss the suit, contending that Ms. Vargo was bound by the discharge injunction which went into effect upon confirmation of its bankruptcy plan.[8] The state court concluded that it had no authority to decide these issues, and the company filed its motion in the bankruptcy court. *Id*.

---

[8] Title 11 U.S.C. § 524(a)(2) provides that

(a) A discharge in a case under this title –

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

The bankruptcy court prefaced its discussion by noting that "[d]ischarge under the [Bankruptcy] Code . . . presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process." *Id*. at 625 (citation omitted). In that regard, "[w]hat constitutes reasonable notice varies according to the knowledge of the parties. . . . [and] if a creditor is *known* to the debtor, notice by publication is not constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the creditor." *Id*. (emphasis added and citation omitted). The court explained that

> [k]nown creditors are defined as creditors that a debtor knew of, or should have known of, when serving notice of the bar date. Among known creditors may be parties who have made a demand for payment against a debtor in one form or another before the compilation of a debtor's schedules. Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim. This communication by itself does not necessarily make the creditor known. Direct knowledge based on a demand for payment is not, however, required for a claim to be considered "known." A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it.

*Id*. at 625-26 (citing *In re Drexel Burnham Lambert Grp., Inc*., 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993)).

In the instant case, the facts as detailed in the complaint were certainly sufficient to alert the hospital "to the possibility that a claim might reasonably be filed against it." *Talon*, 284 B.R. at 626. As in *Talon*, hospital authorities knew Dr. Katrib, knew he was fighting a suspension and potential revocation of his privileges, knew that he had

9

counsel, and knew that he had requested (but not received) a hearing. Accordingly, Dr. Katrib was a known creditor who was entitled to receive actual notice of the hospital's bankruptcy and the bar date; and because actual notice was not given to him, "due process considerations mandate the conclusion that [his] claim[s were] not discharged and [he] is not bound by the terms of the confirmed plan." *Id*.

With respect to the claim in Dr. Katrib's complaint involving the hospital's failure to provide him with a hearing on the merits of the suspension and potential revocation of his privileges, I cannot agree that the hospital's discharge in bankruptcy insulated it from liability for its continuing course of conduct *after* the bankruptcy was concluded. In this regard, in *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit cogently observed that

> [t]he bankruptcy laws provide no justification for such a result. Their purpose is to provide a "fresh start" to a discharged debtor. *United States v. Sotelo,* 436 U.S. 268, 280, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978); *Kokoszka v. Belford,* 417 U.S. 642, 645–646, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). A suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. *A "fresh start" means only that; it does not mean a continuing licence [sic] to violate the law*.

229 F.3d at 875 (emphasis added); *cf. Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 109, 119 (C.D. Cal. 2012) ("[Debtor's] 2009 bankruptcy discharge could not have excused [him] for any infringing activities that he continued post-discharge,

including his continuing to leave online any infringing material that he originally posted pre-petition.").

In this case, it was one thing for the hospital to drag its feet on giving Dr. Katrib a hearing between October 2, 2019, when he formally requested one, and January 10, 2020, when the bankruptcy petition was filed, but it was another thing entirely for the hospital to continue its course of conduct during and after the bankruptcy. To this day, Dr. Katrib has never had a hearing, and thanks to the majority's crabbed view of the law he will never have one. In my view, a very reasonable inference to be drawn from the allegations in the complaint is that the hospital deliberately set a trap, holding Dr. Katrib at bay during the bankruptcy by continuing to negotiate with him, and then springing the trap when the bankruptcy was concluded. What happened here violates all fundamental notions of fairness: a physician has lost his ability to contest what could very well be a career-ending action on the part of the hospital because this Court has decided – notwithstanding the undisputed evidence to the contrary – that he was "unknown" to the institution where he had held privileges for thirty-four years. This is not just unfair; it is manifestly unjust.

For these reasons, I respectfully dissent.